IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DERRICK ASKEW,

Plaintiff

v.

R.L. REPPERT, INC.;
RICHARD L. REPPERT;
R.L. REPPERT, INC. EMPLOYEES PROFIT SHARING 401(k) PLAN; and
R.L. REPPERT, INC. MONEY PURCHASE PLAN (DAVIS BACON PLAN),

Defendants

Civil Action
No. 11-cv-04003

*   *   *

R.L. REPPERT, INC.;
RICHARD L. REPPERT;
R.L. REPPERT, INC. EMPLOYEES PROFIT SHARING 401(k) PLAN; and
R.L. REPPERT, INC. MONEY PURCHASE PLAN (DAVIS BACON PLAN),

Third-Party Plaintiffs

v.

CALIFORNIA PENSION ADMINISTRATORS & CONSULTANTS, INC.,

Third-Party Defendants

APPEARANCES:

        JAMES E. GOODLEY, ESQUIRE
        MARC L. GELMAN, ESQUIRE
            On behalf of Plaintiff

        ROBERT J. KRANDEL, ESQUIRE
            On behalf of Defendants and
            Third-Party Plaintiffs

        DANIEL S. STRICK, ESQUIRE
            On behalf of Third-Party Defendant

# TABLE OF CONTENTS

Page

**INTRODUCTION** ........................................ 1

**MOTIONS** ........................................ 1

**SUMMARY OF DECISION** ........................................ 2

**JURISDICTION** ........................................ 5

**VENUE** ........................................ 5

**PROCEDURAL HISTORY** ........................................ 5

**STANDARD OF REVIEW** ........................................ 8

**FACTS** ........................................ 9

**CONTENTIONS OF THE PARTIES** ........................................ 13

**Contentions of Plaintiff** ........................................ 13

**Contentions of Defendants** ........................................ 15

**DISCUSSION** ........................................ 16

**Counts One and Two: Defendant's Document Production Obligations** ........................................ 16

**Davis Bacon Plan** ........................................ 17

**401(k) Plan** ........................................ 20

***Trust Agreement*** ........................................ 20

***Custodial Agreements*** ........................................ 24

***Periodic Benefit Statements*** ........................................ 34

***Notice of Vested Deferred Benefits*** ........................................ 36

*Disclosure of Financial Reports (Audit, Investment)* .... 37

*Section 404(c) Disclosures* .... 39

*Notice of Qualified Default Investment, Automatic Contribution Arrangement* .... 41

*Notice of Availability of Investment Advice* .... 42

*Depository Documents* .... 43

**Timeliness** .... 46

**Statutory Penalties** .... 49

**Count Three: Breach of Trust Requirement** .... 52

**Count Four: Breach of Fiduciary Duty** .... 54

**Davis Bacon Plan** .... 54

**401(k) Plan** .... 55

**Count Five: Prohibited Transaction – ERISA** .... 60

**Count Six: Benefits Declaration** .... 61

**Legal Fees** .... 69

**CONCLUSION** .... 70

# O P I N I O N

JAMES KNOLL GARDNER
United States District Judge

## INTRODUCTION

Plaintiff Derrick Askew brings this suit against his former employer R.L. Reppert, Inc. ("Reppert, Inc."); Richard L. Reppert; R.L. Reppert, Inc. Employees Profit Sharing 401(k) Plan; and R.L. Reppert, Inc. Money Purchase Plan (Davis Bacon Plan) for a number of alleged violations of the Employee Retirement Income Security Act of 1974 ("ERISA")[1].

For the reasons expressed below, I grant in part, and deny in part, plaintiff's motion for partial summary judgment and dismissal. I also grant in part, and deny in part, defendants' and third party plaintiffs' motion for summary judgment.

## MOTIONS

This matter is before the court on Plaintiff's Motion for Partial Summary Judgment (Counts I, IV – Reppert Pension Plans) and Dismissal (Reppert Health Plans) (Document 73) and Defendants and Third Party Plaintiffs R.L. Reppert, Inc., et al.'s Motion for Summary Judgment Against Plaintiff Derrick Askew (Document 90).

---

[1] Codified at 29 U.S.C. §§ 1001-1461.

Plaintiff filed his motion for partial summary judgment on April 10, 2015 together with a memorandum of law in support and exhibits. Defendants filed their Response to Motion for Partial Summary Judgment with exhibits on April 24, 2015 (Document 78). Plaintiffs' [sic] Reply Memorandum of Law in Support of Plaintiff's Motion for Partial Summary Judgment and Dismissal was filed on June 19, 2015 (Document 87).

Defendants filed their motion for summary judgment on July 31, 2015, together with a memorandum of law in support and exhibits. Plaintiff's Response to Defendant Reppert's Motion for Summary Judgment was filed August 14, 2015 (Document 92).

Oral argument was conducted on both motions for summary judgment on September 22, 2015, at which time the matter was taken under advisement. Hence this Opinion.

## **SUMMARY OF DECISION**

For the following reasons, plaintiff's motion for partial summary judgment and dismissal is granted in part on Count One of his Class Action Complaint because I conclude that defendant Reppert, Inc. failed to produce any required documents pertaining to the 401(k) Plan within thirty days of plaintiff's written request and because defendant failed to produce a custodial agreement with Nationwide Trust Company, FSB.

Plaintiff's motion is denied in part on Count One, because I find that (1) defendant Reppert, Inc. was not

obligated to produce any documents regarding the Davis Bacon Plan; (2) defendant Reppert, Inc. fulfilled any document production obligations it had with respect to trust agreements, periodic benefits statements, notice of vested deferred benefits, disclosure of financial reports, Section 404(c) disclosures, notice of qualified default investment, notice of availability of investment advice, and depository documents for the 401(k) Plan;[2] (3) plaintiff has not provided sufficient evidence to demonstrate entitlement to any custodial agreements other than the Nationwide Trust Company agreement; and (4) there are genuine disputes of material fact relating to what, if any, penalties should be imposed on defendant for such failure.

Plaintiff’s motion for partial summary judgment and dismissal is denied on Count Four because defendants Reppert, Inc. and Richard L. Reppert had no obligation under ERISA to engage a certified public accountant to conduct any audits of the Davis Bacon Plan and because there are genuine disputes of material fact as to whether defendants were required by ERISA to do so for the 401(k) Plan.

Defendants’ and third party plaintiffs’ motion for summary judgment is granted in part, regarding the Davis Bacon Plan, on Counts One and Four because I find that the Davis Bacon

---

[2] These represent eight of the nine categories of documents that plaintiff claims he is entitled to but has not received from defendant Reppert, Inc. See below, Contentions of Plaintiff at pages 13-15.

Plan was defunct and nonexistent after 2001. Defendants' motion is also granted in part regarding trust agreements, periodic benefits statements, notice of vested deferred benefits, disclosure of financial reports, Section 404(c) disclosures, notice of qualified default investment, notice of availability of investment advice and depository documents for the 401(k) Plan because I conclude that defendant Reppert, Inc. fulfilled any document production obligations it had regarding those documents.

Defendants' motion is denied on that part of Count One on which I granted plaintiff's motion for partial summary judgment and for the same reasons. Defendants' motion is also denied on that part of Count One regarding the other custodial agreements other than the Nationwide Trust Company agreement because plaintiff has raised a genuine issue of material fact regarding whether those other custodial agreements are, like the Nationwide Trust Company agreement, documents which defendant Reppert, Inc. is obligated to produce.

Defendants' motion is denied on Count Four because there are genuine disputes of material fact regarding whether defendants were required by ERISA and failed to conduct audits of the 401(k) Plan.

Finally, defendants' motion is granted regarding Count Two because plaintiff is not entitled to any outstanding

plan documents. Defendants' motion is also granted regarding Counts Three, Five and Six, because plaintiff can produce no competent evidence which would permit a rational trier of fact to find in plaintiff's favor on those counts.

## JURISDICTION

Jurisdiction is based upon federal question jurisdiction pursuant to 28 U.S.C. § 1331. Plaintiff brings claims under 29 U.S.C. §§ 1024, 1132 and various other provisions of ERISA.

## VENUE

Venue is proper pursuant to 28 U.S.C. § 1391(b) because defendants reside in, and a substantial part of the events giving rise to this action occurred in, Emmaus, Lehigh County, Pennsylvania, which is located within this judicial district.

## PROCEDURAL HISTORY

On June 17, 2011 Plaintiff filed a six-count Class Action Complaint[3]. Count One alleges violations of ERISA document production requirements under, among others, 29 U.S.C. § 1024(b)(4) and seeks statutory penalties pursuant to 29 U.S.C. § 1132(c)(2) against Reppert, Inc. as plan administrator.

[3] Plaintiff never subsequently moved for class certification.

Count Two avers the same violations as Count One and seeks injunctive relief to compel defendants Reppert, Inc. and Richard L. Reppert to satisfy their statutory document production obligations under ERISA.

Count Three asserts that defendants Reppert, Inc. and Richard L. Reppert failed to establish a trust in violation of 29 U.S.C. § 1103.

Count Four alleges that defendants Reppert, Inc. and Mr. Reppert breached their fiduciary duties in violation of 29 U.S.C. § 1104.

Count Five avers that defendants Reppert, Inc. and Mr. Reppert conducted prohibited transactions in violation of 29 U.S.C. § 1106.

Finally, Count Six alleges that defendants denied benefits owed to plaintiff and seeks a declaration of benefits.

On September 15, 2011 defendants filed a Third Party Complaint against California Pension Administrators & Consultants, Inc. ("CalPac"), seeking to hold it liable for contribution and indemnity to the extent that the defendants themselves were found liable to plaintiff.

On November 14, 2011 CalPac filed a motion to dismiss the Third Party Complaint. On September 28, 2012 I granted that motion. Subsequently, on October 31, 2012 defendants filed a three-count Amended Third Party Complaint against CalPac.

Count One of the Third Party Complaint alleges that CalPac breached its contract with defendants to administer the Reppert plans.

Count Two avers that CalPac misrepresented the administration and recordkeeping services they would provide.

Count Three asserts that CalPac was a co-fiduciary with defendants, and Count Three seeks contribution and indemnity from CalPac to the extent defendants were liable to plaintiff Askew.

On November 14, 2012 CalPac filed a second motion to dismiss, and on September 30, 2013 I granted that motion regarding Count Three only.

As noted above, on April 10, 2015 plaintiff filed his motion for partial summary judgment; on April 24, 2015 defendants filed their response in opposition; and on June 19, 2015 plaintiff filed his reply brief in support of his motion for partial summary judgment.

On July 31, 2015 defendants filed their own motion for summary judgment against plaintiff, and on August 14, 2015 plaintiff filed his response in opposition.

Also on July 31, 2015 third-party defendant filed its motion for summary judgment, and on August 14, 2015 plaintiff filed a response to that motion. Third-party plaintiffs did not file a response to that motion for summary judgment.

By my Order dated November 13, 2015 and filed November 17, 2015, I denied third-party defendant’s motion for summary judgment.

Plaintiff’s motion for partial summary judgment and defendants’ motion for summary judgment are now before me for disposition.

**STANDARD OF REVIEW**

In considering a motion for summary judgment, the court must determine whether “the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Federal Home Loan Mortgage Corporation v. Scottsdale Insurance Company, 316 F.3d 431, 433 (3d Cir. 2003). Only facts that may affect the outcome of a case are “material”. Moreover, all reasonable inferences from the record are drawn in favor of the non-movant. Anderson, supra.

Although the movant has the initial burden of demonstrating the absence of genuine issues of material fact, the non-movant must then establish the existence of each element on which it bears the burden of proof. See Watson v. Eastman Kodak Company, 235 F.3d 851, 857-858 (3d Cir. 2000).

Where a defendant seeks summary judgment, the plaintiff cannot avert summary judgment with speculation, or by resting on the allegations in his pleadings, but rather he must present competent evidence from which a jury could reasonably find in his favor. Sheridan v. NGK Metals Corporation, 609 F.3d 239, 250 n. 12 (3d Cir. 2010) (citing Ridgewood Board of Education v. N.E. ex rel. M.E., 172 F.3d 238, 252 (3d Cir. 1999)); Woods v. Bentsen, 889 F.Supp. 179, 184 (E.D.Pa. 1995) (Reed, J.).

## FACTS

Upon consideration of the pleadings, record papers, exhibits,[4] affidavits and deposition, the pertinent facts for the purpose of these motions are as follows.

Plaintiff Derrick Askew worked for defendant R.L. Reppert, Inc. ("Reppert, Inc."), a commercial wall and ceiling contractor, between July 29, 2007 and August 31, 2008. On November 5, 2008 shortly after leaving the company, Mr. Askew

---

[4] Plaintiff filed exhibits to his motion for partial summary judgment and dismissal as Exhibits 1-24, and they appear as Documents 73-4 through 73-28 on the docket. Plaintiff's exhibits will be referred to in this Opinion by using the exhibit number, rather than the document number.

Defendants filed exhibits both to their response to plaintiff's motion for partial summary judgment as well as to their own motion for summary judgment. The former were filed as Exhibits 1-14 and appear as Documents 78-2 through 78-15 on the docket. The latter were filed as Exhibits A-L and appear as Documents 90-2 through 90-5 on the docket. Defendants' exhibits will be referred to in this Opinion by using the exhibit number or letter, rather than the document number.

requested certain documents pertaining to Reppert, Inc.'s employee benefits plans.[5]

On December 5, 2008 counsel for Reppert, Inc. informed Mr. Askew that the cost of preparing the requested documents would be $1,800, and that once Mr. Askew paid that amount, Reppert, Inc. would then forward the documents to him.[6]  On the same day, counsel for Mr. Askew replied by email, noting that Reppert, Inc. was not permitted under United States Department of Labor regulations to charge more than twenty-five cents per page and asking for an itemization of the $1,800 bill.[7]

Counsel for defendants claims that he then made a telephone call to counsel for Askew, explaining the charges, but that he did not recall with whom he spoke.[8]  Counsel for plaintiff has no recollection of such a call.[9]

Without further communication between the parties, plaintiff filed a two-count Complaint in this court on April 2, 2009, demanding production of the requested documents together

---

[5]     Defendants' Exhibit C.

[6]     Plaintiff's Exhibit 19; Defendants' Exhibit E at page 2.  In a letter four days prior, December 1, 2008, Reppert, Inc. explained that its delay in obtaining the documents was because it had to request them from its third party administrator.  Defendants' Exhibit E at page 1.

[7]     Plaintiff's Exhibit 20; Defendants' Exhibit E at page 5.

[8]     Defendants' Exhibit E at pages 6-7.

[9]     Defendants' Exhibit E at page 10.

with statutory penalties against Reppert, Inc.[10] On October 2, 2009 defendants forwarded a number of documents responsive to Mr. Askew's document request.[11] At that time, defendants claimed that the documents provided were all of the relevant documents in existence.[12] Shortly thereafter, on December 21, 2009 Mr. Askew voluntarily dismissed his complaint "without prejudice".[13]

On June 17, 2011 Mr. Askew brought another suit by filing the present six-count Class Action Complaint. Counts One and Two reassert plaintiff's previous claims that defendant Reppert, Inc. failed to create and provide documents as required by ERISA.

Count Three alleges that defendants Reppert, Inc. and Richard L. Reppert failed to establish a trust as required by 29 U.S.C. § 1103.

---

[10] Complaint, Askew v. R.L. Reppert, Inc. et al., No. 09-cv-01446 (E.D.Pa. Apr. 2, 2009).

[11] Defendants' Exhibit E at pages 18-20. These included United States Department of Labor Form 5500s for the 401(k) Plan for the years 2005-2007, Summary Plan Descriptions for the Davis Bacon Plan and 401(k) Plan, the 401(k) Plan Document, and a Summary Annual Report for Employee's Profit Sharing 401(k) Plan.

[12] Memorandum of Law in Support of Plaintiffs' [sic] Motion for Partial Summary Judgment and Dismissal ("Plaintiff's Memorandum") (Document 73-1) at page 4; Response to Motion for Partial Summary Judgment ("Defendants' Response") (Document 78) at page 4; see also Defendants' Exhibit E at pages 12-20.

[13] Joint Stipulation to Dismiss, Askew v. R.L. Reppert, Inc. et al., No. 09-cv-01446 (E.D.Pa. Dec. 21, 2009).

Count Four alleges that defendants Reppert, Inc. and Mr. Reppert breached their fiduciary duties to the plans by failing to administer them in accordance with ERISA and failing to collect amounts owing to the plans on a timely basis.

Count Five alleges that defendants Reppert, Inc. and Mr. Reppert failed to deposit certain withheld wages.

Count Six seeks declaratory judgment regarding the benefits due to plaintiff.[14]

On April 16, 2012, at the request of United States Magistrate Judge Henry S. Perkin, Mr. Askew compiled a list of all the documents he had previously requested or was currently requesting and indicated which ones he had received or were still missing.[15]  Although defendants have produced some additional documents since April 16, 2012, the parties agree

---

[14]     Class Action Complaint (Document 1) ¶¶ 48-81.  Although plaintiff titled his complaint "Class Action Complaint" and included some class action allegations therein, he has not moved for class certification and has represented to this court that he does not intend to do so.  See Notes of Testimony of the oral argument conducted on September 8, 2015 in Allentown, Pennsylvania, styled "Transcript of Oral Argument Before the Honorable James Knoll Gardner[,] United States District Court Judge" at page 25, lines 17-22.

[15]     Plaintiff's Exhibit 21; Defendants' Exhibit J.  This document is entitled "Reppert Benefit Plan Document Inventory" and will be referred to as "Document Inventory".

that the Document Inventory remains accurate regarding the parties' disputes.[16]

## CONTENTIONS OF THE PARTIES

### Contentions of Plaintiff

Plaintiff contends that he is entitled to summary judgment on Counts One and Four of his Complaint.

With respect to Count One, Plaintiff contends that there are no factual disputes concerning what documents defendants have provided in response to plaintiff's document requests.  However, plaintiff identifies a number of documents to which he claims he is entitled and has not yet received. These include, for the 401(k) Plan:

1.    Trust Agreements

2.    Custodial Agreements

3.    "Periodic Benefit Statements"

4.    "Notice of Vested Deferred Benefits"

5.    "Disclosure of Financial Reports (Audit, Investment)"

6.    "Section 404(c) Disclosures"

7.    "Notice of Qualified Default Investment, Automatic Contribution Arrangement"

---

[16]    See Notes of Testimony of the oral argument conducted on September 22, 2015 in Allentown, Pennsylvania, styled "Transcript of Motions Argumet [sic] Before the Honorable James Knoll Gardner[,] United States District Judge" ("N.T. 9/22/2015") at pages 28-30.  At that oral argument, plaintiff identified only one other category of document not listed in the Document Inventory which he believes to be still missing, that is, certain depository documents.

8. “Notice of Availability of Investment Advice”[17]

9. Depository Documents[18]

Regarding the Davis Bacon Plan, plaintiff asserts that he has received no documents except for the “Summary Plan Description”.

Plaintiff contends that because he has not received the documents to which he claims he is entitled and because he has not received them in the statutorily prescribed time limit, he is entitled to judgment and statutory penalties under 29 U.S.C. § 1132(c)(1).

Concerning Count Four, plaintiff contends that it is undisputed that defendants did not engage an independent certified public accountant to conduct an annual audit of the 401(k) Plan for the years 2007 to 2011. Plaintiff contends that the failure to do so violates 29 U.S.C. § 1023(a)(3)(A). As a consequence, plaintiff contends that he is entitled to equitable relief to enforce that provision of ERISA in the form of an independent audit of the 401(k) Plan.

Regarding the balance of plaintiff’s claims –- Counts Two, Three, Five and Six -- he states that he “hopes and expects that [the requested independent] audit will also answers [sic]

---

[17] Document Inventory at pages 1-4.

[18] See N.T. 9/22/15 at page 29.

the questions remaining under the other counts of the Complaint for the 401(k) Plan and Davis Bacon Plan."[19]

**Contentions of Defendants**

Defendants contend that they are entitled to summary judgment on each of plaintiff's claims.

With respect to Counts One and Two, regarding their document production obligations, defendants agree that there is no dispute over what documents have been provided. However, defendants argue that the documents already produced are the only ones that are required to be produced under ERISA. The nine categories of documents that plaintiff identifies as still outstanding have either already been produced or are not required to be produced, according to defendants.

Regarding Count Three, defendants contend that the 401(k) Plan documents serve as a trust instrument. Consequently, defendants argue that they have established a trust in compliance with 29 U.S.C. § 1103.

With respect to Count Four, defendants contend that they were not required to conduct and file annual audits for the 401(k) Plan prior to 2012 because they qualified for a waiver of that requirement pursuant to 29 C.F.R. § 2520.104-46. Moreover,

---

19 Plaintiff's Motion for Partial Summary Judgment (Counts I,IV -- Reppert Pension Plans) and Dismissal (Reppert Health Plans) (Document 73) at page 2.

they contend that plaintiff has neither identified, nor supported with evidence, any other alleged breach of fiduciary duty.

Finally, concerning Counts Five and Six, defendants contend that plaintiff fails to identify any evidence which establishes a breach of fiduciary duties, prohibited transactions or denial of benefits. Instead, defendant argues that plaintiff relies exclusively on conclusory allegations, an alleged lack of documentation, and an independent audit which he now seeks from the court. Consequently, because there is no evidence to support plaintiff's claims, defendants contend that they are entitled to judgment on Counts Five and Six.

## DISCUSSION

### Counts One and Two: Defendant's Document Production Obligations

Regarding the issue of Reppert, Inc.'s document production obligations, there is no dispute of material fact about what documents defendant has actually produced. Rather, the parties disagree about whether that production is legally sufficient. As noted above, plaintiff identifies nine specific categories of documents relating to the 401(k) Plan to which he believes he is entitled, but has not received. Furthermore, concerning the Davis Bacon Plan, plaintiff contends that he has only received the Summary Plan Description.

Initially, I address whether Reppert, Inc. is obligated to provide documents relating to the Davis Bacon Plan. I then analyze each of the categories of documents relating to the 401(k) Plan and determine whether Reppert, Inc. is obligated to produce those. Finally, I consider whether Reppert, Inc. has produced the required documents in a timely manner.

**Davis Bacon Plan**

It is undisputed that Reppert, Inc. has not provided any documents regarding the Davis Bacon Plan except a Summary Plan Description.[20] Plaintiff contends that this minimal document production violates a number of provisions of ERISA that require the production of documents relating to that plan.[21] However, defendants contend that the Davis Bacon Plan was actually defunct as of 2001, when the Reppert 401(k) Plan was amended to include contributions for prevailing wage, and as a consequence, Reppert, Inc. had no obligation to produce documents relating to a nonexistent plan.[22]

---

[20] Plaintiff's Memorandum at page 5; Defendants and Third Party Plaintiffs R.L. Reppert, Inc., et al.'s Memorandum of Law in Support of their Motion for Summary Judgment Against Plaintiff, Derrick Askew ("Defendants' Memorandum") (Document 90) at page 8; Document Inventory at pages 5-7.

[21] Document Inventory at pages 5-7.

[22] Defendants' Memorandum at page 8. Defendants assert that they turned over the outdated Davis Bacon Plan Summary Plan Description by mistake.

To support their contention that the Davis Bacon Plan was inoperative as of 2001, defendants attach the affidavit of Cynthia Ellner, President of CalPac, which was retained by Reppert, Inc. to set up and administer Reppert, Inc.'s employee pension plans.[23]  In that affidavit, Ms. Ellner states that "[t]he amended 401(k) Plan prepared by CalPac and adopted by Reppert allowed for contributions for prevailing wages. . . . a separate Davis Bacon Plan did not exist after CalPac was retained and Reppert adopted the new 401(k) Plan document prepared by CalPac".[24]

Defendants further contend that consistent with Ms. Ellner's affidavit, the amended 401(k) Plan contains numerous provisions that account for prevailing wage contributions.[25]  Moreover, internal Reppert, Inc. documents showing benefits paid to each of its employees for 2007 also reflect that fringe benefits contributions to meet prevailing wage obligations were paid into the 401(k) Plan.[26]

---

[23]     Defendants' Exhibit H at pages 1-2.

[24]     Id. at pages 3, 5.

[25]     R.L. Reppert, Inc. Employees' Profit Sharing 401(k) Plan ("401(k) Plan Document"), Plaintiff's Exhibit 12 §§ 1.56-57, 2.1(d), 2.2(d), 3.1(f), 3.1(i)(4) and 4.6(f).

[26]     R.L. Reppert, Inc. Employees' Profit Sharing 401(k) Plan Annual Statement of Benefits for the Period Ending:  12/31/2007 ("2007 Reppert, Inc. Statement of Benefits"), Plaintiff's Exhibit 3.

By contrast, plaintiff identifies no countervailing evidence but merely argues that "[a]n adopted plan does not just disappear by itself" and that "neither Reppert nor CalPac has produced proper documents to terminate the Davis-Bacon Plan properly or amend it to be replaced by the 401(k) Plan".[27]

I conclude that plaintiff's unsupported, conclusory allegations that the Davis Bacon Plan still exists are insufficient to raise a genuine dispute of material fact. See Sheridan, 609 F.3d at 250 n. 12.

Moreover, given that there is no genuine dispute that the Davis Bacon Plan was inoperative as of 2001, six years before plaintiff Askew's employment, plaintiff was never a participant or beneficiary of that plan. Plaintiff has not identified anything in the record before me that suggests otherwise except that he was given the Davis Bacon Plan Summary Plan Description.[28] However, the fact that he was mistakenly given the Summary Plan Description for a defunct plan does not mean that he was actually enrolled in that plan. In fact, the same internal Reppert, Inc. documents referred to above show

---

[27] Plaintiff's Response to Defendant Reppert's Motion for Summary Judgment ("Plaintiff's Response") (Document 92) at page 3.

[28] Id.

that prevailing wage contributions were paid into Mr. Askew's 401(k) Plan account and not to any Davis Bacon account.[29]

Therefore, I also conclude that plaintiff cannot demonstrate that he has statutory standing under 29 U.S.C. § 1132(a)(1) to request documents and bring suit with respect to the Davis Bacon Plan.

Accordingly, I grant that portion of defendants' motion for summary judgment, and dismiss that portion of plaintiff's motion for partial summary judgment, regarding the Davis Bacon Plan.

**401(k) Plan**

***Trust Agreement***

ERISA requires that, in general, "all assets of an employee benefit plan shall be held in trust by one or more trustees. Such trustee or trustees shall be either named in the trust instrument or in the plan instrument . . . or appointed by a person who is a named fiduciary". 29 U.S.C. § 1103(a).

No provision of ERISA requires that there be an independent trust agreement separate from the plan instrument. Jenkins v. Yager, 444 F.3d 916, 922 n. 4 (7th Cir. 2006); see also 1 Lee T. Polk, ERISA Practice and Litigation § 7:3 (2015). In Jenkins, the United States Court of Appeals for the Seventh

[29] 2007 Reppert, Inc. Statement of Benefits, Plaintiff's Exhibit 3 at page 3.

Circuit looked to a pension plan's plan instrument to determine the responsibilities of the plan's trustee. Jenkins, 444 F.3d at 922. In doing so, the Seventh Circuit noted that "ERISA does not mandate a separate written trust agreement. In this case, the plan instrument defines the Trust and sets forth trustee responsibilities." Id. at 922 n. 4.

Indeed, far from mandating a separate written trust agreement, ERISA acknowledges circumstances where separate trust agreements may not exist: For example, as noted above, 29 U.S.C. § 1103(a) provides that the trustee can be "either named in the trust instrument or in the plan instrument". Similarly, 29 U.S.C. § 1105(c)(3) defines "trustee responsibility" as any responsibility provided for in the trust instrument "if any" trust instrument exists.

ERISA also requires that the plan administrator

> shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated.

29 U.S.C. § 1024(b)(4).

Pursuant to this provision, plaintiff requested "[a] copy of any trust agreement, custodial agreement or other document governing the trust and custody of assets of the

[401(k)] Plan" in his initial document request of November 5, 2008.  However, plaintiff contends that defendants never produced any trust or custodial agreements.

Defendants argue that the 401(k) Plan Document constitutes the relevant trust agreement.  Consequently, they contend that they fulfilled that obligation on October 2, 2009 when they first provided plaintiff with the 401(k) Plan Document.[30]  Defendants also contend that Reppert, Inc. had no statutory obligation to produce any custodial agreements.

It is well-settled that "[n]o particular words or form are required to create a trust relationship so long as the settlor's intention is clear."[31]  Jackman v. Equitable Life Assurance Society of the United States, 145 F.2d 945, 948 (3d Cir. 1944); Vidunas v. O'Reilly, 2015 WL 5177762, at *12. (W.D.Pa. Sept. 4, 2015) (Conti, C.J.); Restatement (Third) of Trusts § 13 cmt. b (2003).

All that is required to create a trust in Pennsylvania is "(1) an express intention to create a trust; (2) an ascertainable res; (3) a sufficiently certain beneficiary; and (4) a trustee who 'owns' and administers the res for the benefit

---

[30]     Defendants' Exhibit E at pages 19-20.

[31]     "ERISA 'requir[es] the application of traditional trust law in the administration of the statute.'"  Pell v. E.I. DuPont de Nemours & Company Incorporated, 539 F.3d 292, 309 (3d Cir. 2008) (quoting Coar v. Kazimir, 990 F.2d 1413, 1422 (3d Cir. 1993)).

of the beneficiary." In re Kulzer Roofing, Inc., 139 B.R. 132, 139 (Bankr. E.D.Pa. 1992), aff'd 150 B.R. 134 (E.D.Pa. 1992) (Van Antwerpen, J.).

Although the 401(k) Plan Document does not explicitly refer to itself as a trust agreement, its language plainly conforms to the above elements and clearly evinces an intent to create a trust. The plan identifies a *res*, the assets of the 401(k) Plan, which is funded by contributions from Reppert, Inc.[32] It identifies the beneficiaries, the employee participants of the Plan.[33] It names specific trustees.[34] It defines their powers and duties.[35] It is implicit that those trustees hold title to the assets.[36] Finally, it states its purpose, which is to provide certain benefits to the employees of Reppert, Inc.[37]

---

32 401(k) Plan Document §§ 1.78, 3.1.

33 401(k) Plan Document §§ 1.11, 1.50 and 2.1.

34 401(k) Plan Document, at P4219, P4307 and § 1.77. The Plan names Richard L. Reppert and Timothy J. Reppert as trustees. However, Timothy J. Reppert is no longer a trustee, because he is deceased.

Where I cite "Pxxx", I refer to the Bates stamp pagination. Bates stamping or Bates numbering refers to a system of placing numbers or other marks on legal documents to label and identify them.

35 401(k) Plan Document §§ 7.1-7.16 ("Article Seven").

36 401(k) Plan Document §§ 7.1(c) ("Each successor Trustee will succeed to the title to the Trust . . . . The former Trustee . . . will execute all documents and perform all acts necessary to vest the Trust Fund's title of record in any successor Trustee.")

37 401(k) Plan Document at P4308.

In a recent decision by the United States Court of Appeals for the Ninth Circuit, Barboza v. California Association of Professional Firefighters, 2015 WL 5061180 (9th Cir. Aug. 28, 2015), the Circuit Court considered similar circumstances in determining whether an instrument establishing a plan governed by ERISA also served as a trust agreement which satisfied 29 U.S.C. § 1103. Finding that ERISA did not define the terms "trust", "trustee" or "trust instrument", the Ninth Circuit relied on the common law definitions of those terms and held that "[a]s long as the trust or plan instrument names a person who will hold property in trust for another, § 1103(a) is satisfied." Id. at *5.

The reasoning of the Ninth Circuit in Barboza is persuasive. Consistent with that decision, together with the language of the statute and the terms of the 401(k) Plan Document in this case, I conclude that the 401(k) Plan Document serves as a trust agreement for purposes of 29 U.S.C. §§ 1024(b)(4) and 1103(a). Moreover, I find that Reppert, Inc. provided plaintiff Askew with such a trust agreement on October 2, 2009.

***Custodial Agreements***

Plaintiff also contends that he is entitled to custodial agreements such as the Nationwide Trust Company agreement, the only one that has been specifically identified

and produced in this case.[38]  Plaintiff argues that he is entitled to these custodial agreements both because (1) they are "contract[s]" or "other instrument[s] under which the Plan is established or operated" under 29 U.S.C. § 1024(b)(4); and alternatively, (2) they constitute trust agreements which are explicitly required to be produced by § 1024(b)(4).[39]

Courts agree that the plain language of 29 U.S.C. § 1024(b)(4) refers only to "formal documents that govern the plan, not to all documents by means of which the plan conducts operations".  Board of Trustees of the CWA/ITU Negotiated Pension Plan v. Weinstein, 107 F.3d 139, 143 (2d Cir. 1997); also Murphy v. Verizon Communications, Incorporated, 587 Fed.Appx 140, 142-145 (5th Cir. 2014) (collecting cases).

Consistent with this understanding, as defendants argue, courts have refused to require disclosure of non-formal, non-legal operating documents such as actuarial valuation reports,[40] IRS tax determination letters, bonding policies insuring the plan, appraisal reports, trustee expense policy,[41] a

---

[38]    Defendants' Exhibit 3.  I address the other, unidentified custodial agreements below.

[39]    See e.g., Plaintiffs' [sic] Reply Memorandum of Law in Support of Plaintiff's Motion for Partial Summary Judgment and Dismissal ("Plaintiff's Reply") (Document 87) at page 6 & n.5.

[40]    Weinstein, 107 F.3d at 144-145.

[41]    Faircloth v. Lundy Packing Company, 91 F.3d 648, 654-655 (4th Cir. 1996)

list of names and addresses of retired plan participants,[42] claim forms that participants used to submit claims,[43] and so forth. None of those documents were formal, legal documents comparable to a "contract, deed, will, bond, or lease", Faircloth, 91 F.3d at 653 (quoting Black's Law Dictionary 801 (6th ed. 1990)), nor did they "set[] out rights, duties, or obligations", as opposed to merely "describ[ing] various rights and obligations", Weinstein, 107 F.3d at 142, 144.

However, unlike the above non-formal, non-legal documents, the custodial agreement before the court, the Nationwide Trust Company agreement, is clearly a formal, legal document -- it is a contract between R.L. Reppert, Inc. as the 401(k) Plan sponsor and Nationwide Trust Company, FSB.[44]  My inquiry then turns to whether the Nationwide Trust Company agreement is a contract or other instrument "under which the

---

[42]    Hughes Salaried Retirees Action Committee v. Administrator of Hughes Non-Bargaining Retirement Plan, 72 F.3d 686, 690 (9th Cir. 1995), which rejected the argument that such list was required to be produced because it was "critical to the operation of the plan".

[43]    Allinder v. Inter-City Products Corporation (USA), 152 F.3d 544, 549-550 (6th Cir. 1998).

[44]    Defendants' Exhibit 3 at P7565-P7566.

plan is established or operated”.[45] 29 U.S.C. § 1024(b)(4). In doing so, I am cognizant of the legislative history and purpose of the statute, which is to

> “allow ‘the individual participant [to] know[] exactly where he stands with respect to the plan—what benefits he may be entitled to, what circumstances may preclude him from obtaining benefits, what procedures he must follow to obtain benefits, and who are the persons to whom the management and investment of his plan funds have been entrusted.’”

Hughes, 72 F.3d at 690 (quoting S.Rep. No. 127, 83d Cong., 2d Sess. (1974), reprinted in 1974 U.S.C.C.A.N. 4838, 4863); see also Firestone Tire and Rubber Company v. Bruch, 489 U.S. 101, 118, 109 S.Ct. 948, 958, 103 L.Ed.2d 80, 97 (1989).

Consistent with this understanding of the statute’s purpose, courts have refused to find that third-party services agreements fall within the ambit of Section 1024(b)(4) if they only govern the relationship between the third-party and plan and “not the relationship between the plan participants and the provider”. Hively v. BBA Aviation Benefit Plan, 331 Fed.Appx 510, at 510 (9th Cir. 2009).

---

[45] Unfortunately, the parties did not cite, nor is the court aware of, any case that has specifically addressed custodial agreements. Plaintiff correctly observes that the district court in Faircloth determined that the participants in the Lundy Packing Company employee stock ownership plan were entitled to “contracts with custodians of assets, investment managers, and insurers of plan assets”, but that determination was not appealed or addressed by the Fourth Circuit in its opinion. 91 F.3d at 652.

For example, the district court in Morley v. Avaya Inc. Long Term Disability Plan for Salaried Employees, 2006 WL 2226336, at *18-*19 (D.N.J. Aug. 3, 2006), determined that there was no obligation under Section 1024(b)(4) for the plan administrator to produce a "Professional Services Contract" it entered into with a third-party claims administrator because that contract did not describe the terms of the plan or restrict or govern the plan's operation.

Similarly, the district court in Local 56, United Food and Commercial Workers Union v. Campbell Soup Company, 898 F.Supp. 1118, 1136 (D.N.J. 1995), concluded that a third-party administrative services agreement was not a formal plan document where it did not "describe[] health benefits" but merely "memorialized the obligations [administrator] and Defendant Company owed to each other."

However, courts have generally found that documents which allow "the individual participant [to] know[] exactly where he stands with respect to the plan" are required to be disclosed under Section 1024(b)(4). Hughes, 72 F.3d at 690. For example, in Hess v. Hartford Life and Accident Insurance Company, 91 F.Supp.2d 1215, 1226 (C.D.Ill. 2000), aff'd, 274 F.3d 456 (7th Cir. 2001), the court determined that a plan participant was entitled to documents that "determined benefit base levels", because "[a] prerequisite to any benefits

determination is a calculation of the benefits base", and "the way in which that benefits base is calculated necessarily changes the way in which the plan is managed."

Similarly, the Fourth Circuit in Faircloth determined that participants in the company's employee stock ownership plan ("ESOP") were entitled under Section 1024(b)(4) to funding and investment policies, because they "set forth [the company's] obligations to fund the ESOP and explain the responsibilities regarding investing the assets of the ESOP." 91 F.3d at 656.

In Michaels v. American International Group, Inc., 2008 WL 4279582 (E.D.Mo. Sept. 15, 2008), the district court determined that an administrative services contract between American International Group, Inc., the plan administrator, and Disability Reinsurance Management Services, Inc. did fall under the disclosure requirements of Section 1024(b)(4). It did so because the contract contained "a provision that purports to grant discretion and authority from AIG[,] Inc. to Defendant DRMS to determine eligibility for benefits and construe and interpret all terms and provisions of the [plan]." Id. at *6.

Consequently, the court determined that the contract "did more than just memorialize the obligations owed between Defendant AIG[,] Inc. and Defendant DRMS". Id. Rather it was "a document 'that restrict[s] or govern[s] a plan's operation'" and thus was subject to Section 1024(b)(4). Id. (quoting Allen

v. Honeywell Retirement Earnings Plan, 382 F.Supp.2d 1139, 1168 (D.Ariz. 2005)).

Finally, in the separate but related context of determining what documents "are part of, and control the operation of, a welfare plan", the United States Court of Appeals for the Third Circuit in Saltzman v. Independence Blue Cross, 384 Fed.Appx 107 (3d Cir. 2010), determined that a formulary, a listing of medications for which coverage is provided under an employee welfare benefit plan, was a plan document that governed the plan and which created enforceable rights on behalf of the participants. Id. at 112-113.

There the Third Circuit reasoned that "the formulary describes the operation of the plan, specifies the basis upon which payments are made, and puts the plan participants on notice as to the scope of their benefits and is essential to a participant's understanding of what copayment he or she will be required to pay for certain drugs". Id. at 113. Consequently, it is a plan document that governs the plan. Id.

Turning again to the Nationwide Trust Company agreement, although it primarily governs the relationship between Nationwide Trust Company and Reppert, Inc. and specifically disclaims investment management and fiduciary

responsibilities,[46] the agreement does dictate important aspects about the participants' benefits under the 401(k) Plan and who is or is not responsible for the management and investment of plan funds.

The Nationwide Trust Company agreement incorporates a number of schedules which determine what investment funds a plan participant can choose to invest his or her benefits in;[47] determine what the default investment option is;[48] designate the authorized representative and details its duties, acts, responsibilities and obligations;[49] and define the rights and obligations of the Self-Directed Brokerage Accounts ("SDBA") provider.[50]

In other words, from the perspective of a participant, the Nationwide Trust Company agreement establishes to a substantial extent where and how his or her benefits were going

---

[46] Defendants' Exhibit 3, Articles V, IX, at P7593, P7595.

[47] Defendants' Exhibit 3, "Fund Selection Schedule", at P7577-P7585.

[48] Defendants' Exhibit 3, "QDIA/Default Fund Selection Schedule", at P7574-P7576.

[49] Defendants' Exhibit 3, "Authorized Representative Schedule", at P7599-P7600. The authorized representative is Delaware Valley Retirement, Inc. Id. at P7565. This schedule provides that the authorized representative would, among other things, submit to Nationwide Trust Company all the contributions to the 401(k) Plan, obtain and retain information regarding values and fund balances for the benefit of the sponsor and participants, and access account balances and to make exchanges and change fund elections of the participants. Id. at P7599.

[50] Defendants' Exhibit 3, "Self-Directed Brokerage Schedule", at P7603-05. The SDBA provider facilitates the participants' ability to direct the investment of their benefits.

to be invested and who would be managing and administering his benefits account.  In this manner, the Nationwide Trust Company agreement is comparable to the funding and investment policies addressed in Faircloth, the administrative services contract in Michaels, and the formulary in Saltzman.

Although I consider it a close question, I find that the Nationwide Trust Company agreement was required to be disclosed under 29 U.S.C. § 1024(b)(4) as a contract or other instrument "under which the Plan is established or operated." Because I find that the Nationwide Trust Company agreement is a contract or other instrument that falls under the ambit of Section 1024(b)(4), I need not decide whether the Nationwide Trust Company agreement also constitutes a trust agreement under Section 1024(b)(4).

With respect to the other, unidentified custodial agreements to which plaintiff claims entitlement, although he contends that there were other custodial agreements prior to 2010, the only evidence in the record which supports that claim is the deposition testimony of Richard L. Reppert when he listed the names of some possible former custodians.[51]

---

[51]     Oral deposition of Richard L. Reppert, Sr., taken at the law offices of Flamm Walton, PC, Westfield Corporate Center, 4905 Tilghman Street, Suite 310, Allentown, Pennsylvania, on February 12, 2015, before Mary Ann Cadden, Certified Court Reporter and Notary Public ("Reppert, Sr.

(Footnote 51 continued):

Viewing this testimony in the light most favorable to defendants for purposes of plaintiff's motion for partial summary judgment, there is no evidence in the record to show how many agreements there are, when they were active (and therefore, whether plaintiff was even entitled to ask for them), and what the substance of those agreements were.  In the absence of such evidence, I cannot determine that these other custodial agreements, like the Nationwide Trust Company agreement, were contracts or other instruments "under which the Plan is established and operated" and therefore must be produced under Section 1024(b)(4).

On the other hand, viewing Mr. Reppert's testimony in the light most favorable to plaintiff for purposes of defendant's motion for summary judgment, I find it reasonable to infer that written agreements must have existed between Reppert, Inc. and the former custodians and that they were similar in content and function to the Nationwide Trust Company agreement.  Consequently, I cannot determine that Reppert, Inc.

---

(Continuation of footnote 51):

Deposition"), Plaintiff's Exhibit 16 at pages 146-147.

With respect to previous custodians, Mr. Reppert claimed that "it was MG Trust, or Sterling Trust, Matrix Trust, during the term of California Pensions, from 2000 to 2010." Id. at page 146.  When asked if "there are any trust agreements that [he] was aware of from 2000 to 2010", Mr. Reppert claimed that "[i]f we had them, you have them." Id. at pages 146-147.

was not required under Section 1024(b)(4) to produce one or more of these other custodial documents.

The parties will have the opportunity to develop and argue this issue further at trial. However, based on the record before me, I cannot grant judgment in favor of either party on Reppert, Inc.'s obligation to produce the other custodial agreements.

***Periodic Benefit Statements***

Initially, plaintiff contended that he had not received the periodic benefit statements that were required under 29 U.S.C. § 1025(a).[52] Defendants countered that they had, in fact, continuously sent those benefit statements to the address which plaintiff provided defendants during his employment.[53] Defendants further explained that beginning in July 2011, those mailings were returned as undeliverable.[54]

On February 12, 2015, at the deposition of Richard L. Reppert, defendants provided plaintiff's counsel with those returned benefit statements and inquired about plaintiff's new

---

[52] See Document Inventory at page 1.

[53] Defendants' Memorandum at page 11; Defendants' Exhibit A ¶¶ 2-3.

[54] Defendants' Memorandum at page 11; Defendants' Exhibit B.

mailing address.[55]  On February 16, 2015 plaintiff's counsel
apprised defendants of plaintiff's new mailing address.[56]

Plaintiff's response is that (1) defendants do not
explain why plaintiff did not receive any benefit statements
prior to 2011, and (2) plaintiff asked for these benefit
statement as early as August 24, 2012 but did not receive them
until February 12, 2015.[57]

First, defendants do explain what happened to the
periodic benefit statements prior to 2011, namely, that they
were sent to plaintiff's address, and they support that
contention with the affidavit of Richard L. Reppert.[58]  Plaintiff
cites nothing in the record that would reflect otherwise.

Second, plaintiff cites page five of Plaintiff's First
Set of Interrogatories to All Defendants (Document 69,
Exhibit 1) as Mr. Askew's August 24, 2012 request for "a copy of
his account statement".[59]  Nothing in that document specifically
requests periodic benefit statements.[60]

---

[55]    Defendants' Memorandum at page 11; Defendants' Exhibit A ¶ 6.

[56]    Defendants' Memorandum at page 11; Defendants' Exhibit G.

[57]    Plaintiff's Response at page 9.

[58]    Defendants' Exhibit A ¶¶ 2-3.

[59]    Plaintiff's Response at page 9.

[60]    Plaintiff's interrogatories only request that the defendants
explain why periodic benefit statements were not produced to plaintiff.

Even assuming that a request for the periodic benefit statements was made on August 24, 2012, 29 U.S.C. § 1132(c)(1) requires only that the plan administrator "mail[] the material requested to the last known address of the requesting participant or beneficiary" and will not penalize any failure to do so if "such failure or refusal results from matters reasonably beyond the control of the administrator". As already noted, it is undisputed that defendant Reppert, Inc. had been continuously mailing periodic benefit statements to plaintiff's last known address, and that plaintiff had moved without informing defendants. Because I find that plaintiff's failure to receive those benefit statements was reasonably beyond the control of the plan administrator, I conclude that Reppert, Inc. satisfied its obligation to provide periodic benefit statements under 29 U.S.C. § 1025(a)(1)(A).

***Notice of Vested Deferred Benefits***

Plaintiff clarified in his response to defendants' motion for summary judgment that the requested "Notice of Vested Deferred Benefits . . . must be issued for former employees under the Internal Revenue Code, 26 U.S.C. § 6057, Treas. Reg. [26 C.F.R.] 301.6057-1(a)(3), (a)(5), (e)."[61]

---

[61] Plaintiff's Response at page 8.

Title 29 United States Code Section 1132(c)(1) permits plaintiff to sue for certain violations of ERISA, not for violations of the Internal Revenue Code. Plaintiff has not argued or cited any provision giving him any right to sue to enforce the Internal Revenue Code. Consequently, I find that defendant Reppert, Inc. is not liable under Section 1132(c)(1) for failure to produce "Notice[s] of Vested Deferred Benefits".

***Disclosure of Financial Reports (Audit, Investment)***

In his original document request on November 5, 2008 plaintiff requested "[a] copy of the financial statements of the Plan and the opinion of any certified public accountant relating thereto for the last three Plan years, which are available".[62] On April 16, 2012 plaintiff once again requested "Disclosure[s] of Financial Reports (Audit, Investment)", citing 29 U.S.C. § 1024(b)(4) as the statutory basis for his request.[63]

Defendants contend that "[i]t is wholly unclear exactly what Plaintiff is asking for, and . . . § 1024(b)(4) in no way states that disclosure of financial reports is required to be provided."[64] Plaintiff subsequently clarified that what he meant by the "Disclosure of Financial Reports (Audit,

---

[62] Defendants' Exhibit C.

[63] Document Inventory at page 2.

[64] Defendants' Memorandum at page 14.

Investment)" was the audit report that is generally required to be attached as part of the annual report, filed with the Department of Labor as a Form 5500, under 29 U.S.C. § 1023(a)(3)(A).[65]

The issue of whether an independent audit was required for the 401(k) Plan is contested by the parties and is discussed in greater detail below regarding Count Four of plaintiff's Class Action Complaint. However, regardless of whether defendants were required to obtain an independent audit and attach that report as part of the annual report, it is undisputed that plaintiff did in fact receive the complete annual report that was filed with the Department of Labor.[66]

Plaintiff is attempting to recast his Count Four claim that the annual report was technically deficient as an addit-ional document production request. Plaintiff was entitled to the "latest annual report" under 29 U.S.C. § 1024(b)(4), and that is what plaintiff received. Consequently, I find that defendant satisfied its document production obligations with respect to the annual report.

Moreover, to hold a plan administrator liable under 29 U.S.C. § 1132(c)(1), the written request for documents must

---

[65] Plaintiff's Response at pages 6-7.

[66] Document Inventory at page 1. In fact, plaintiff received the Form 5500s for 2005, 2006 and 2007, as well as the Summary Annual Report for 2007.

provide the administrator with “clear notice”. Clear notice requires enough specificity that the administrator “knew or should have known which documents were being requested”. Kollman v. Hewitt Associates, LLC, 487 F.3d 139, 145 (3d Cir. 2007) (quoting Anderson v. Flexel, Inc., 47 F.3d 243 (7th Cir. 1995)).

Although the request need not specifically name the documents sought, neither plaintiff’s initial request nor his second request make clear that the document he was actually seeking was the audit report that is generally required to be filed with the annual report.

From the perspective of the plan administrator, plaintiff’s vague requests for “financial statements”, “financial reports” and “the opinion of any certified public accountant” appear to be requesting documents to which he is not entitled under 29 U.S.C. § 1024(b)(4). See Weinstein, 107 F.3d at 144-147, stating that “actuarial valuation reports” are not required under Section 1024(b)(4); Faircloth, 91 F.3d at 655, holding that Section 1024(b)(4) does not require “appraisal or valuation reports”. Consequently, I also find that plaintiff’s requests did not provide clear notice to defendant Reppert, Inc.

***Section 404(c) Disclosures***

In his April 16, 2012 Document Inventory, plaintiff requested a number of different “Section 404(c) Disclosures”

that he claimed were required under 29 U.S.C. § 1104(c) and
29 C.F.R. § 2550.404a-5.[67]  Title 29 United States Code
Section 1104(c) addresses pension plans which permit the
participants or beneficiaries to exercise control over the
assets in their accounts.

With respect to these participant-directed individual
account plans, the Department of Labor has promulgated
regulations that create additional disclosure requirements for
plan administrators.  29 C.F.R. § 2550.404a-5.  The "Section
404(c) Disclosures" that plaintiff lists on page three of the
Document Inventory are only required by this regulation and not
by the statute.

A plan administrator's "failure to provide information
required by federal regulations d[oes] not state a claim under
ERISA § 502(c)(1) [29 U.S.C. § 1132(c)(1)]" because "the words
'this subchapter' in § 502(c) refer only to violations of
statutorily imposed obligations, and that the term does not
embrace violations of regulations promulgated pursuant to the
statute."  Kollman, 487 F.3d at 146-47 (quoting Groves v.
Modified Retirement Plan for Hourly Paid Employees of the Johns

---

[67]     Document Inventory at page 3.  Plaintiff separately lists
"Disclosure of Plan Fees and Expenses" on page four of the Document
Inventory, but that appears to be a mistake because he already included that
as items 2(g) and 2(h) under "Section 404(c) Disclosures".

Manville Corp. and Subsidiaries, 803 F.2d 109, 111 (3d Cir. 1986)).

Consequently, I find that Reppert, Inc. is not liable under 29 U.S.C. § 1132(c)(1) for any failure to produce "Section 404(c) Disclosures".

***Notice of Qualified Default Investment, Automatic Contribution Arrangement***

Title 29 United States Code Section 1104(c)(1)(A)(ii) exempts any fiduciary of a participant-directed individual account plan from all liability for any loss resulting from a participant or beneficiary's exercise of control over the assets in his or her individual account. Where the participant or beneficiary has the ability to, but does not actually, make an investment election, he is still considered to have exercised control over his assets, if those assets are invested by the plan in accordance with certain Department of Labor regulations and when he receives notice of such default investment. 29 U.S.C. § 1104(c)(5)(B).

Plaintiff concedes that this notice requirement is not mandatory and not subject to penalties under 29 U.S.C. § 1132(c)(1).[68] Consequently, I find that defendant Reppert, Inc. is not liable to plaintiff for failing to provide a "Notice

---

[68] Plaintiff's Response at page 7.

of Qualified Default Investment, Automatic Contribution Arrangement”.

***Notice of Availability of Investment Advice***

Title 29 United States Code Section 1106 generally prohibits transactions between the plan and any party in interest, except as specifically provided in Section 1108. Of relevance here, Sections 1108(b)(14) and 1108(g) permit the “provision of investment advice . . . to a participant or beneficiary of an individual account plan” by a person with discretionary authority over the plan or by a person who renders investment advice for compensation, provided that certain requirements, including written disclosure of information about the fiduciary adviser and the investment options, are met.

Here, defendants contend, and plaintiff does not dispute, that no defendant provided any investment advice to any plan participant or beneficiary.[69] If anything, notwithstanding the fact that Nationwide Trust Company specifically disclaims investment responsibility or any provision of investment advice,[70] plaintiff seems to contend that Nationwide Trust Company, not Reppert, Inc., was required to provide such

---

[69] Defendants’ Memorandum at pages 14-15; see Plaintiff’s Response at page 8.

[70] Defendants’ Exhibit 3, Article V, at P7593 (“No one providing investment advice to the Plan, Sponsor, Participant or other party is acting as an agent of Nationwide.”)

disclosures.[71] However, Nationwide Trust Company is not a defendant in this case. In any event, I find that Reppert, Inc. is not liable for failing to provide any "Notice of Availability of Investment Advice".

***Depository Documents***

Finally, plaintiff claims that he was also entitled to "depository documents".[72] Plaintiff claims that he asked for these documents in his original document request of November 5, 2008 as "financial statements of the Plan" and again on August 24, 2012 as "Documents, Records, and Summaries regarding deposits into the R.L. Reppert[,] Inc. Employees Profit Sharing 401(k) Plan . . . for work on prevailing wage jobs".[73] Plaintiff contends that he is entitled to these depository documents under 29 U.S.C. § 1024(b)(4).[74] In particular, plaintiff argues that because Section 1024(b)(4) requires the plan administrator to produce trust and custodial agreements, and because the

---

[71] Plaintiff's Response at page 8 ("It is expected that Nationwide has done this in recent years".).

[72] N.T. 9/22/2015 at page 29. Plaintiff describes these as "documents relating to deposits into any of the plans . . . so that it could be verified as to whether the proper amounts were actually remitted." Id.

[73] Id. at pages 31-32; also Plaintiff's Motion to Compel Defendants to Cooperate in Discovery (Document 52) at page 2. Magistrate Judge Perkin determined that this discovery request was a new one, propounded on defendants on March 20, 2015, the last day of discovery. Order of United States Magistrate Judge Henry S. Perkin dated and filed April 10, 2015 (Document 74) at pages 1-2.

[74] N.T. 9/22/2015 at pages 30-31.

custodian, here Nationwide Trust Company, also had balance or depository records that it provided to plan participants, those balance or depository documents should also be provided under Section 1024(b)(4).[75]

First, plaintiff's argument regarding his entitlement under Section 1024(b)(4) to these depository documents is misplaced. As previously discussed, Section 1024(b)(4) "confines administrators' disclosure obligations under that section to governing documents". Weinstein, 107 F.3d at 142. Depository documents would not be "formal documents that govern the plan". Id. at 143. Moreover, Section 1024(b)(4) certainly does not require that the plan administrator provide any and all documents that the custodian of plan assets possesses, merely because the plan administrator is required to produce trust and custodial agreements. That argument has no support in the text of the statute and has no limiting principle.

Second, neither of plaintiff's requests identifies with much clarity what he is seeking. His request of "financial statements" in his original November 5, 2008 letter is vague. His subsequent discovery request of "documents . . . regarding deposits" on August 24, 2012 is marginally better but still fails to identify what plaintiff is really seeking, which are

---

[75] N.T. 9/22/2015 at pages 30-31.

records of participant balances and deposits into participant accounts from an independent, third party.

Plaintiff did receive annual benefits statements for the participants of the 401(k) Plan that, consistent with his discovery request, list for each participant his or her account balance and the total deposits into that account for the year.[76] However, plaintiff contends that this is insufficient, because it is "simply a document that Reppert appears to have created itself, unverifiable."[77]

Consequently, plaintiff seeks balance and depository information from a third party so that he can "verif[y] . . . whether the proper amounts were actually remitted."[78] Even if Section 1024(b)(4) imposes a duty on plan administrators to produce balance and depository documents in the possession of third parties, which it does not, plaintiff would not have given "clear notice" that that was what he was requesting.

As a consequence, I find that defendant Reppert, Inc. is not liable under 29 U.S.C. § 1132(c)(1) to plaintiff for failure to produce payroll and depository documents.

---

[76] See Plaintiff's Exhibit 3. Plaintiff has information about his own benefits balance and deposits into his account, because, as discussed previously, he has his periodic benefits statements.

[77] N.T. 9/22/2015 at page 29.

[78] Id.

**Timeliness**

Next, I consider whether defendant Reppert, Inc. satisfied its document production obligations in a timely manner. The issue of whether Reppert, Inc. was required to produce any other custodial agreements remains unresolved. Thus, my analysis is restricted to those documents already produced. If it is later determined that other custodial agreements were required to be produced, I will then consider the timeliness (or perhaps more accurately, the tardiness) of that production.

Title 29 United States Code Section 1132(c)(1) requires that the plan administrator "mail[] the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request".

In this case, it is undisputed that Mr. Askew made his initial written document request on November 5, 2008.[79] However, defendant Reppert, Inc. did not provide any of the requested documents until October 2, 2009, nearly a year later.[80] Defendants contend that such delay was not in bad faith, because Reppert, Inc. "had the documents in its possession on December 5, 2008 – 30 days after Plaintiff's first request" and

---

[79] Defendants' Exhibit C.

[80] Defendants' Exhibit E at pages 18-20.

only failed to provide those documents to plaintiff because of "a breakdown in communication".[81]

Specifically, defendants, in their December 5, 2008 letter response to plaintiff, requested a payment of $1,800.00 to cover their costs before they would supply plaintiff with the requested documents.[82] Plaintiff responded, requesting an itemization of the $1,800.00 charge.[83]

What happened next, whether defendants' counsel phoned plaintiff's counsel to explain the charge or not, is disputed.[84] Regardless, it is undisputed that plaintiff never paid the $1,800.00 charge.

Defendants, however, cannot excuse their delay by pointing to plaintiff's failure to pay $1,800.00. Although 29 U.S.C. § 1024(b)(4) permits the administrator to "make a reasonable charge to cover the cost of furnishing such complete copies", the Secretary of Labor has determined that a reasonable charge is one "equal to the actual cost per page to the plan for the least expensive means of acceptable reproduction" that "in no event may . . . exceed 25 cents per page." 29 C.F.R.

---

81 Defendants' Memorandum at page 21.

82 Defendants' Exhibit E at page 2.

83 Id. at page 5.

84 Id. at pages 6-7 and 10.

§ 2520.104b-30. “No other charge for furnishing documents, such as handling or postage charges, will be deemed reasonable.” Id.

Here, defendants admit that the vast majority of the requested $1,800.00 charge (approximately $1,600.00) was attributed to the labor costs of “getting the records together” with only the balance (approximately $200.00) being copying charges.[85] Even assuming that the $200.00 copying charge was reasonable, defendant was not permitted to charge plaintiff Askew with the labor costs of collecting and preparing plan documents that it should have had in its possession in the first place.[86] See 29 U.S.C. § 1024(b)(2).

Consequently, I find that Reppert, Inc. is liable for failure to produce requested plan documents from December 5, 2008 (thirty days after plaintiff’s request) until October 2, 2009.

Regarding the Nationwide Trust Company agreement, which I have determined is required to be produced, it is undisputed that plaintiff requested it no later than April 16,

---

[85] Defendants’ Exhibit E at page 6.

[86] Defendants’ argument would have been more plausible, if not meritorious, if Reppert, Inc. had asked for a reasonable charge under the regulation. Cf. Brown v. Federal Express Corporation, 62 F.Supp.3d 681, 689-690 (W.D. Tenn. 2014), which held the plan administrator liable but imposed no penalties where the administrator required payment of a permissible copying fee of 25 cents per page. Birdsell v. United Parcel Service of America, Inc., 903 F.Supp. 1338, 1346-1347 (E.D.Mo. 1995) found no violation where the plan administrator required payment of 25 cents per page ($27.50 total).

2012, the date of his Document Inventory.[87] It is also undisputed that plaintiff did not receive it until January 2015, although he does not make clear exactly when he did.[88]

**Statutory Penalties**

Title 29 United States Code Section 1132(c)(1) provides in pertinent part:

> [a]ny administrator . . . who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary . . . may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal.

The Secretary of Labor, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, has increased that maximum penalty to $110 per day. 29 C.F.R. § 2575.502c-1.

To determine whether to impose a penalty and how great a penalty, I must consider a number of factors including "bad faith or intentional conduct on the part of the administrator, the length of the delay, the number of requests made and documents withheld, and the existence of any prejudice to the

---

[87] Plaintiff could not have requested it earlier than June 18, 2010 because it was not in existence prior to that date. See Defendants' Exhibit 3 at P7566.

[88] Plaintiff's subpoena is dated January 8, 2015. Exhibit 3 to Plaintiff's Second Motion to Compel Defendants to Cooperate in Discovery (Document 69-7) at page 11.

participant or beneficiary."   Romero v. SmithKline Beecham,
309 F.3d 113, 120 (3d Cir. 2002).

In this case, the issue of whether defendant
Reppert, Inc. was required to produce any other custodial
agreements remains unresolved.  Additionally, the parties have
not clearly identified when plaintiff actually received the
Nationwide Trust Company agreement.  Without resolving these
questions, I cannot determine the maximum statutory penalty.

Moreover, there are factual disputes concerning
whether there was bad faith or intentional conduct on the part
of the administrator and whether there was any prejudice to
plaintiff Askew.  For example, the parties disagree on what, if
any, communications they had following defendants' December 5,
2008 letter response to plaintiff's initial document request.[89]
The parties also dispute whether plaintiff suffered any
prejudice from the delay in receiving the documents.[90]

These outstanding factual issues preclude any
determination of statutory penalties at this stage.

Consequently, I grant plaintiff summary judgment in
part on Count One regarding defendant Reppert, Inc.'s liability

---

[89]    See Defendants' Response (Document 78) at pages 3-4; Defendants'
Memorandum (Document 90) at pages 2, 21; Defendants' Exhibit E.

[90]    See Plaintiff's Memorandum (Document 73-1) at pages 24-25;
Defendants' Memorandum (Document 90) at page 21.

for failure to produce documents in the statutorily prescribed time and for failure to produce the Nationwide Trust Company agreement, in relation to the 401(k) Plan. I deny plaintiff summary judgment in part on Count One regarding the Davis Bacon Plan, all other documents relating to the 401(k) Plan (other than the Nationwide Trust Company agreement) and statutory penalties.

I grant defendants summary judgment in part on Count One with respect to the Davis Bacon Plan and trust agreements, periodic benefits statements, notice of vested deferred benefits, disclosure of financial reports, Section 404(c) disclosures, notice of qualified default investment, notice of availability of investment advice and depository documents for the 401(k) Plan. I deny defendants summary judgment in part on Count One with respect to Reppert, Inc.'s liability for its failure to timely produce documents and regarding custodial agreements, including the Nationwide Trust Company agreement.

I also grant defendants summary judgment on Count Two of plaintiff's Class Action Complaint, which sought an injunction compelling defendants to produce any missing plan documents. Because I have determined that the only plan document to which plaintiff is currently entitled and had not received from defendants is the Nationwide Trust Company agreement, and because plaintiff is now in possession of that

agreement, there are no further documents which still need to be produced to plaintiff in this case.[91]

**Count Three: Breach of Trust Requirement**

Title 29 United States Code Section 1103 requires that "all assets of an employee benefit plan shall be held in trust by one or more trustees." In his complaint, plaintiff alleged that "[d]efendants did not produce any trust instruments within the meaning of 29 U.S.C. § 1103" and concluded that, consequently, "[d]efendants have failed to establish a trust for the Reppert 401(k) Plan or the Reppert Money Purchase Plan".[92]

Plaintiff's claims in Count Three fail for substantially the same reasons his claims fail in Count One regarding Reppert, Inc.'s alleged failure to produce trust agreements:

---

[91] Although the issue of whether defendant Reppert, Inc. was obligated to produce former custodial agreements remains unresolved, plaintiff is only entitled to the latest operative plan documents. See 29 U.S.C. § 1024(b)(4); Fischer v. Carpenters Pension and Annuity Fund of Philadelphia and Vicinity, 2011 WL 3438091, at *6 (E.D.Pa. Aug. 5, 2011) (Padova, J.); Leung v. Skidmore, Owings & Merrill LLP, 213 F.Supp.2d 1097, 1104-1105 (N.D.Cal. 2002); Jackson v. E.J. Brach Corporation, 937 F.Supp. 735, 739 (N.D.Ill. 1996).

There is no dispute that the Nationwide Trust Company agreement is the only currently operative custodial agreement. Consequently, even if plaintiff were entitled to, and failed to receive, certain other custodial agreements when he originally requested them in 2008, this court is not aware of any statutory basis to compel the production of those documents in 2016 if they are now outdated or inoperative.

[92] Class Action Complaint (Document 1) ¶¶ 59-60.

First, because I conclude that the Davis Bacon Plan was defunct as of 2001, plaintiff does not have standing as a participant or beneficiary of that plan to raise this claim concerning the Davis Bacon Plan.[93]

Second, with respect to the 401(k) Plan, defendants have, in fact, produced a trust agreement, namely the 401(k) Plan Document, and after four years of litigation, plaintiff has not uncovered any other "evidence" to support his claim.  In fact, it's not clear that plaintiff opposes defendants' motion for summary judgment on this count.[94]  To the extent that he does, plaintiff continues to argue that his claim "hinge[s] on documentation from Reppert to show the existence of a trust and account for its assets.  As such documentation has not been produced, the Court can and should draw an adverse inference against Reppert . . . and compel an audit to ascertain the actual facts."[95]  That is not sufficient.

---

[93]     See above at pages 17-20.

[94]     Plaintiff's Response at pages 9-10.  Plaintiff argues that Counts Two, Four, Five and Six remain outstanding.  He does not explicitly mention or address Count Three.

[95]     Plaintiff's Response at pages 9-10.  As noted earlier, plaintiff simultaneously argues that, based on Article 7 of the 401(k) Plan Document, the Nationwide Trust Company agreement superseded the 401(k) Plan Document as the "trust agreement" that must be produced under 29 U.S.C. § 1024(b)(4).  See id. at page 5; Plaintiff's Reply at pages 5-7.  Plaintiff's arguments are self-contradictory.  Either there is a trust agreement (whether that is the 401(k) Plan Document or the Nationwide Trust Company agreement) or there is not.

In the absence of any competent evidence which enables me, as factfinder in this non-jury matter, to rule in plaintiff's favor on this count, I grant defendants' motion for summary judgment on Count Three of plaintiff's Class Action Complaint.

**Count Four: Breach of Fiduciary Duty**

Plaintiff contends that defendants Reppert, Inc. and Mr. Reppert, breached their fiduciary duties to the plan by failing to engage an independent qualified public accountant to conduct audits of the 401(k) Plan and Davis Bacon Plan from 2007 to 2011 in violation of 29 U.S.C. § 1023(a)(3)(A).[96] Accordingly, plaintiff seeks injunctive relief under 29 U.S.C. § 1132(a)(3) to compel an audit of the 401(k) Plan and Davis Bacon Plan for the years 2007 to 2011.

**Davis Bacon Plan**

For the same reasons discussed above with respect to defendant Reppert, Inc.'s document production obligations as to the Davis Bacon Plan, I find that the Davis Bacon Plan was defunct and inoperative as of 2001.[97] As a result, plaintiff's claim regarding that plan must fail because: (1) defendants had no obligations nor owed any fiduciary duties to a nonexistent

---

[96] Plaintiff's Memorandum at pages 11-14.

[97] See above at pages 17-20.

plan; and (2) plaintiff does not have statutory standing to sue as a participant of the Davis Bacon Plan.

For these reasons, I grant summary judgment for defendants on plaintiff's Count Four regarding the Davis Bacon Plan only, and I deny summary judgment for plaintiff on Count Four concerning the Davis Bacon Plan.

**401(k) Plan**

Title 29 United States Code Section 1132(a)(3) allows "a participant, beneficiary, or fiduciary" to bring suit

> (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this sub-chapter or the terms of the plan.

"Finding a violation of ERISA is a prerequisite to awarding relief under § 1132(a)(3). . . . [M]aking out such a claim does not require bad faith; it merely requires a violation of ERISA." Leckey v. Stefano, 501 F.3d 212, 229 (3d Cir. 2007).

Here, the alleged violation of ERISA is defendant's failure to engage an accountant to conduct audits of the 401(k) Plan for the years 2007 to 2011. Title 29 United States Code Section 1023(a)(3)(A) generally requires a plan administrator to "engage an independent qualified public accountant" to examine the financial statements of the plan and to render an opinion as to whether the financial statements and schedules the plan files

as part of its annual report is “in conformity with generally accepted accounting principles”. That audit is then attached as part of the annual report.

However, Section 1023(a)(3)(A) also provides that “[i]n a case where by reason of section 1024(a)(2) of this title a plan is required only to file a simplified annual report, the Secretary may waive the requirements of this paragraph.”

Pursuant to that authority, the Secretary of Labor has exempted employee pension benefits plans from the Section 1023(a)(3)(A) audit requirement, provided that the plan files a simplified annual report and satisfies three additional conditions: (1) “[a]t least 95 percent of the assets of the plan constitute qualifying plan assets”; (2) the summary annual report contains certain additional information; and (3) “[i]n response to a request from any participant or beneficiary, the administrator, without charge . . ., makes available for examination” certain information and statements required under the previous subsection. 29 C.F.R. § 2520.104-46(b).

Defendant contends that the 401(k) Plan fell under this exemption, and therefore, he was not in violation of Section 1023(a)(3)(A).[98] Indeed, the annual reports filed for the 401(k) Plan between 2007 and 2011 used the simplified annual

[98] Defendants’ Response at pages 9-12.

report form and claimed a waiver of the annual audit requirement.[99]

However, plaintiff contends that (1) defendant was not permitted to file, and improperly filed, simplified annual reports for 2008 through 2011, and (2) defendant did not satisfy the other three required conditions for the audit waiver.[100]

Generally, an employee pension benefit plan can only file a simplified annual report if it has fewer than 100 participants at the beginning of the plan year.  29 C.F.R. § 2520.104-41(b).  However, an employee pension benefit plan with between 80 and 120 participants at the beginning of a plan year can continue to file a simplified annual report if it did so the previous year.  29 C.F.R. § 2520.103-1(d) ("the 80-120 participant rule").

It is undisputed that the 401(k) Plan had fewer than 100 participants at the beginning of 2007, and consequently, defendant was permitted to file a simplified annual report for

---

[99]     Neither the plaintiff nor the defendants provided a complete set of the Form 5500s from 2007 to 2011 as exhibits to their respective motions. They both omitted the critical 2008 Form 5500.  However, Third Party Defendant CalPac did include the 2008 Form 5500 as Exhibit M to Third Party Defendant California Pension Administrators & Consultants, Inc.'s Motion for Summary Judgment Pursuant to F.R.C.P. 56 (Document 89) ("CalPac's Exhibit M").  For purposes of this Opinion, I take judicial notice of the 2008 Form 5500 as a matter of public record but will cite CalPac's exhibit for convenience.  See Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014).

[100]     Plaintiff's Reply at pages 2-3.

that year.[101]  From 2008 to 2011, defendant claimed on the relevant Form 5500s that the 401(k) Plan had between 110 and 118 participants at the beginning of each of those plan years.[102] Thus, in accordance with the 80-120 participant rule, defendant would be permitted to file a simplified annual report for each of those years.

Plaintiff, however, contends that the 401(k) Plan had 144 participants at the beginning of the 2008 plan year, which would have placed it outside the ambit of the 80-120 participant rule.  In support of his contention, plaintiff points to Reppert, Inc.'s annual benefits statements for 2007.[103]  These benefits statements document the total benefits that each participant in the 401(k) Plan had accrued as of December 31, 2007.  Moreover, as plaintiff claims, these benefits statements list 144 unique participants of the 401(k) Plan as of December 31, 2007.

Viewing those benefits statements in the light most favorable to plaintiff and drawing all reasonable inferences in his favor, I find that there are genuine disputes of material fact concerning the number of participants at the beginning of

---

[101]   Plaintiff's Exhibit 6 at P4026.

[102]   Plaintiff's Exhibits 6-9; CalPac's Exhibit M.

[103]   See Plaintiff's Exhibit 3.

the 2008 plan year and, as a result, whether defendant was entitled to file simplified annual reports for 2008 through 2011.[104]  Consequently, I must deny both plaintiff and defendants' motions for summary judgment on Count Four of plaintiff's Class Action Complaint regarding the 401(k) Plan.

Although I have determined summary judgment to be inappropriate because of the factual dispute relating to whether defendant was permitted to file a simplified annual report for the years 2008 through 2011, I briefly address plaintiff's second argument.

Plaintiff contends that, even if defendant properly filed simplified annual reports, defendant did not satisfy the three additional conditions listed in 29 C.F.R. § 2520.104-46(b).[105]  However, plaintiff fails to identify any evidence to support his claim that defendants failed to satisfy the three additional conditions that would qualify the 401(k) Plan for simplified annual reporting.  Thus, I conclude that plaintiff has not raised a genuine issue of material fact on this point for trial.

---

[104]   Although plaintiff has not produced evidence to contradict the number of participants listed on the Form 5500s for 2009, 2010 and 2011, the defendant could file a simplified annual report for those years under the 80-120 participant rule only if he were permitted to file a simplified annual report for 2008.

[105]   Plaintiff's Reply at page 3.

In summary, I deny summary judgment for plaintiff on Count Four, and I grant defendants summary judgment in part, with respect to the Davis Bacon Plan, and deny defendants summary judgment in part, with respect to the 401(k) Plan, for defendant on plaintiff's Count Four.[106]

**Count Five: Prohibited Transaction – ERISA**

In his complaint, plaintiff alleges that "Reppert and Trustees have failed to deposit any residual difference between each wages [sic] and the required prevailing wage in a separate trust on a timely basis in violation of 29 U.S.C. § 1106".[107] As with Count Three, plaintiff fails to identify any evidence to support his claim and instead continues to rely on "an adverse inference against Reppert that prevents summary judgment for

---

[106] In the "Facts" section of his initial memorandum of law in support of his motion for summary judgment, plaintiff identifies two additional reasons why "[t]he need for an audit is evident" but ultimately fails to raise or develop these points in his "Argument" section. See Plaintiff's Memorandum at pages 7-9.

In particular, plaintiff claims that (1) there are "unexplained discrepancies" with respect to his benefits, and (2) defendants improperly allowed certain "profit sharing" withholdings to revert back to Reppert, Inc. in violation of the express terms of the 401(k) Plan.

Concerning the former, I address the issue of plaintiff's benefits claims in detail below, in the context of plaintiff's Count Six. With respect to the latter, to the extent that this should be construed as an additional argument under plaintiff's Count Four, plaintiff can further develop the issue at trial.

[107] Class Action Complaint ¶ 75.

present purposes", while waiting for "an audit to ascertain the actual facts."[108]

However, in the absence of competent evidence which would enable me as the factfinder to rule in plaintiff's favor on this count, defendant's motion for summary judgment is granted on Count Five of plaintiff's Class Action Complaint.

**Count Six: Benefits Declaration**

Finally, plaintiff seeks a declaration of benefits on behalf of himself and a class of other Reppert, Inc. employees who may be eligible for benefits.[109]

Plaintiff never sought to certify a class or to certify himself as class representative. Thus, he is not permitted to sue to declare or recover benefits on behalf of any other employee of Reppert, Inc. See Fed.R.Civ.P. 23(a) and (c).

Plaintiff represented that he believes that "under ERISA class action certification is not required to seek

---

[108] Plaintiff's Response at page 10.

[109] Class Action Complaint ¶¶ 16, 78-81.

Ordinarily, "a federal court will not entertain an ERISA claim unless the plaintiff has exhausted the remedies available under the plan." Harrow v. Prudential Insurance Company of America, 279 F.3d 244, 249 (3d Cir. 2002) (citing Weldon v. Kraft, Inc., 896 F.2d 793, 800 (3d Cir. 1990)).

"The exhaustion requirement is a nonjurisdictional affirmative defense." Metropolitan Life Insurance Company v. Price, 501 F.3d 271, 280 (3d Cir. 2007).

Defendant raised this affirmative defense in his answer but has not, to my knowledge, raised the issue subsequently. Amended Answer to Class Action Complaint with Third Party Complaint at page 16.

recovery on behalf of similarly situated plan participants such as Mr. Askew and any other plan participants who were similarly harmed with regard to insufficient deposits being made on their behalf."[110]

In one sense, plaintiff is correct in that 29 U.S.C. § 1132(a) permits him as an individual participant to sue for breaches of fiduciary duty or to sue to enforce provisions of ERISA or of the plan, and a successful suit may very well benefit other participants and beneficiaries as well as himself.  29 U.S.C. § 1132(a)(2) and (3); see Graden v. Conexant Systems Inc., 496 F.3d 291, 295-297 (3d Cir. 2007); Weaver Brothers Insurance Associates, Inc. v. Braunstein, 2014 WL 2599929, at *23 (E.D.Pa. June 10, 2014) (Slomsky, J.).

For example, when a participant sues under Section 1132(a)(2) for a breach of fiduciary duty, he does so "on behalf of the plan itself.  Consequently, the plan takes legal title to any recovery, which then inures to the benefit of its participants and beneficiaries."  Graden, 496 F.3d at 296.[111]

---

[110]    N.T. 9/8/2015 at page 23.

[111]    The United States Court of Appeals for the Second Circuit in Coan v. Kaufman considered whether an individual plan participant was permitted to bring suit in a representative capacity under Section 1132(a)(2) without moving to certify a class.  457 F.3d 250 (2d Cir. 2006).  The circuit court determined that ERISA did not require the certification of a class action but concluded that such a plaintiff must "take adequate steps under the circumstances properly to act in a 'representative capacity on behalf of

(Footnote 111 continued):

However, if plaintiff contends that Section 1132 permits him to sue to declare or recover benefits on behalf of a class of other participants without first moving to certify a class, he is mistaken.  Section 1132 expressly states that "[a] civil action may be brought -- (1) by a participant or beneficiary -- . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan".  29 U.S.C. § 1132(a)(1)(B).  The clear language of this provision only permits a participant to sue to recover or clarify his own personal benefits, not those of any other participant.

Moreover, nothing in Section 1132(a)(1)(B) purports or acts to overturn the stringent requirements of Federal Rule of Civil Procedure 23, which require a court determination and order certifying that the class and representative party satisfy

---

(Continuation of footnote 111):

the plan.'"  457 F.3d at 261.

The latter portion of the Second Circuit's decision in Coan, regarding the necessity for plaintiff to take some unspecified adequate steps under the circumstances, has received "mixed reviews".  Perez v. Bruister, 54 F.Supp.2d 629, 649-650 (S.D.Miss. 2014) (collecting cases).  The Third Circuit has not weighed in on this issue.  See In re Wilmington Trust Corp. ERISA Litigation, 2013 WL 4757843, at *2 n. 5 (D.Del. Sept. 4, 2013).

In either case, courts generally agree that an individual plaintiff may bring suit on behalf of the plan under Section 1132(a)(2) without certifying a class action.

the four prerequisites listed in Rule 23(a) and one of the additional conditions listed in Rule 23(b).

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only. To come within the exception, a party seeking to maintain a class action must affirmatively demonstrate his compliance with Rule 23." Comcast Corporation v. Beherend, __ U.S. __, 133 S.Ct. 1426, 1432, 185 L.Ed.2d 515, 521 (2013) (internal quotations and citations omitted).

In the absence of such a demonstration and this court's certification, plaintiff is not permitted to litigate on behalf of some undefined class of other Reppert, Inc. employees.

However, even if plaintiff were permitted to do so, his claim would still fail because he has produced no competent evidence demonstrating that he, or any other participant of the 401(k) Plan, has been wrongfully denied benefits. Nor has he presented any evidence that would provide a basis to declare what his, or any other participant's, benefits are or would be.

Plaintiff concedes this deficiency in a number of his filings. For example, in a passage referred to a number of times, plaintiff states that

> [t]he disposition of Counts IV, V and VI on fiduciary duty and trust requirements hinge on documentation from Reppert to show the existence of a trust and account for its assets. As such documentation has not been produced, the Court

> can and should draw an adverse inference against Reppert that prevents summary judgment for present purposes and compel an audit to ascertain the actual facts.[112]

Prior to that, plaintiff admitted that "[w]ithout the full payroll data and un-redacted account statements to cross-reference for all employees, it is impossible to resolve the doubts about correct and timely payments to the Reppert Pension Plans for all employees."[113]

The only "evidence" plaintiff offers that may address the question of benefits is an alleged discrepancy between the "fringe benefit amounts on Mr. Askew's paystub as 'BENEF' ($13.64/hour) and the fringe benefit rate ($17.89/hour) identified on certified payroll for the Washington Township, New Jersey public works project on the week ending April 6, 2008" and the declaration of Ronald Feldman, a certified public accountant "who found unexplained discrepancies".[114]

However, the alleged "discrepancy" between the paystub and the certified payroll is superficial. Although the deduction labeled "BENEF" on plaintiff's paystub from that week is in fact different from the "hourly fringe" rate listed on the certified payroll report, the deposition testimony of Richard L.

---

[112] Plaintiff's Response at pages 9-10.

[113] Plaintiff's Memorandum at page 8.

[114] Id. at page 7.

Reppert, which plaintiff cites, explains that the lower "BENEF"
deduction is net of "some other benefit he got" such as "health
insurance, vacations, holidays – things like that that are
provided benefits to him."[115]

Plaintiff has not identified any evidence that would
contradict this explanation.  Moreover, in spite of this alleged
discrepancy, plaintiff's paystub and the certified payroll
record are consistent concerning plaintiff's hourly rate
("$37.27"), his gross earnings ("$1,490.80"), his total pay
including all benefits ("$2,036.40"), his total deductions
("$1,049.56") and his net pay ("$986.84").  If, as plaintiff
seems to suggest, there were something improper, these documents
do not reveal it.

Plaintiff also submits the declaration of Ronald
Feldman, a certified public accountant, as evidence that there
were "unexplained discrepancies" with respect to plaintiff's
benefits.  However, this declaration is problematic for a number
of reasons.

Plaintiff appears to be attempting to submit and rely
on expert testimony without complying with this court's Order
requiring the submission of "the name, address, curriculum vitae
and a signed, written expert report containing the findings,

---

[115]    Reppert, Sr. Deposition at pages 114-115.

conclusions and opinions, of each such witness", before any expert witness is permitted to testify at trial.[116]

Plaintiff responds that the declaration of Mr. Feldman is not, in fact, an expert report but rather merely "explains why an expert report cannot be prepared from the edited materials provided by Defendants and the questions that an accountant might have on the accuracy of Reppert's calculations."[117]  Plaintiff further argues that he is not acting contrary to this court's Order, because "Mr. Feldman has not proposed to testify as an expert at trial or offer an expert report at trial."[118]  Rather, "[h]is declaration simply provides an opinion for the Court's benefit on pre-trial matters."[119]

First, plaintiff appears to concede that this declaration is not admissible at trial.[120]  However, in conducting my analysis of the parties' motions for summary

---

[116]    See my Rule 16 Status Conference Order dated October 23, 2014 and filed October 27, 2014 (Document 61) at pages 2-3.

[117]    Plaintiff's Response in Opposition to the Motion of Defendants and Third Party Plaintiffs to Preclude Testimony of Ronald Feldman (Document 103) at page 1.

[118]    Id.

[119]    Id. at page 2.

[120]    Mr. Feldman's declaration is plainly expert opinion.  As he himself states in his declaration, "I have been retained . . . to assist on accounting issues . . . .  I have come to the professional opinion . . . .  It is my understanding and professional opinion . . . ." Plaintiff's Exhibit 18 at pages 1-3.  However, to date, plaintiff has not submitted an expert report or complied with any other requirement regarding expert testimony as set forth in my Rule 16 Status Conference Order.  See footnote 116, above.

judgment, I am only permitted to consider evidence that is actually admissible at trial. See Bristol v. Settle, 457 Fed.Appx 202, 204 (3d Cir. 2012); Pamintuan v. Nanticoke Memorial Hospital, 192 F.3d 378, 387 n. 13 (3d Cir. 1999); Williams v. Borough of West Chester, Pennsylvania, 891 F.2d 458, 467 (3d Cir. 1989).

Federal Rule of Civil Procedure 56(c)(4) states that an "affidavit or declaration used to support or oppose a motion must . . . set out facts that would be admissible in evidence". Because Mr. Feldman's declaration is not admissible at trial, I cannot, and do not, consider it for purposes of summary judgment.

However, even if I were permitted to consider Mr. Feldman's declaration, it would not offer any evidence that would permit me to grant any relief to plaintiff. As Mr. Feldman himself explains, his declaration does little more than identify a few apparent "discrepancies" and "doubts" and conclude that "these doubts cannot be resolved from the records provided by Reppert to date."[121] In other words, Mr. Feldman concedes that there is not enough evidence to establish that any wrongdoing has occurred, let alone enough evidence to permit me

[121] Plaintiff's Exhibit 18 at pages 2-3.

to definitively declare what plaintiff Askew's benefits ought to be.

For the foregoing reasons, I conclude that plaintiff has produced no evidence to support his claim for a declaration of benefits. Accordingly, I grant summary judgment for defendants on Count Six of plaintiff's Class Action Complaint.

**Legal Fees**

Both parties have requested attorney's fees and costs in this matter. Title 29 United States Code Section 1132(g)(1) permits this court "in its discretion [to] allow a reasonable attorney's fee and costs of action to either party." However, to determine whether an award would be appropriate I must consider five factors: "(1) the offending party's culpability or bad faith; (2) the ability of the offending parties to satisfy the award of attorney's fees; (3) the deterrent effect of an award of attorney's fees; (4) the benefit conferred upon members of the . . . plan as a whole; and (5) the relative merits of the parties' positions." Hahnemann University Hospital v. All Shore, Inc., 514 F.3d 300, 310 (3d Cir. 2008) (quoting Martorana v. Board of Trustees of Steamfitters Local Union 420 Health, Welfare and Pension Fund, 404 F.3d 797, 804 (3d Cir. 2005)).

At this stage, because the parties have submitted minimal briefing on their entitlement to attorney's fees and

costs and because many of the factors I must consider remain unresolved, I conclude that a determination of attorney's fees and costs is premature.

**CONCLUSION**

For all the foregoing reasons, I grant plaintiff's motion for partial summary judgment in part regarding liability (but not damages) for that part of Count One of plaintiff's Class Action Complaint alleging defendant R.L. Reppert, Inc.'s failure to provide plan documents for the R.L. Reppert, Inc. Employees Profit Sharing 401(k) Plan in a timely manner and for that part of Count One alleging defendant R.L. Reppert, Inc.'s failure to produce the custodial agreement with Nationwide Trust Company, FSB. I deny plaintiff's motion for partial summary judgment in all other respects.

I grant defendants' motion for summary judgment in part, regarding that part of Count One of plaintiff's Class Action Complaint alleging R.L. Reppert, Inc.'s failure to provide plan documents for the R.L. Reppert, Inc. Money Purchase Plan (Davis Bacon Plan) and that part of Count One alleging R.L. Reppert, Inc.'s failure to produce trust agreements, periodic benefits statements, notice of vested deferred benefits, disclosure of financial reports, Section 404(c) disclosures, notice of qualified default investment, notice of availability

of investment advice and depository documents for the R.L. Reppert, Inc. Employees Profit Sharing 401(k) Plan.

I also grant defendants’ motion for summary judgment regarding that part of Count Four of plaintiff’s Class Action Complaint alleging R.L. Reppert, Inc.’s failure to conduct audits of the R.L. Reppert, Inc. Money Purchase Plan (Davis Bacon Plan).

I further grant defendants’ motion for summary judgment on Counts Two, Three, Five and Six of plaintiff’s Class Action Complaint.

I deny defendants’ motion for summary judgment regarding that part of Count One of plaintiff’s Class Action Complaint alleging R.L. Reppert, Inc.’s failure to provide plan documents for the R.L. Reppert, Inc. Employees Profit Sharing 401(k) Plan in a timely manner and that part of Count One of plaintiff’s Class Action Complaint alleging R.L. Reppert, Inc.’s failure to provide custodial agreements relating to the R.L. Reppert, Inc. Employees Profit Sharing 401(k) Plan.

I also deny defendant’s motion for summary judgment regarding that part of Count Four of plaintiff’s Class Action Complaint alleging R.L. Reppert, Inc.’s failure to conduct audits of the R.L. Reppert, Inc. Employees Profit Sharing 401(k) Plan.