| | |
|---|---|
| DERRICK ASKEW, <br>       Plaintiff, <br><br> v. <br><br> R.L. REPPERT, INC.; RICHARD L. REPPERT; <br> R.L. REPPERT, INC. EMPLOYEES PROFIT <br> SHARING 401(K) PLAN; and <br> R.L. REPPERT, INC. MONEY PURCHASE <br> PLAN (DAVIS BACON PLAN), <br>       Defendants. | No. 5:11-cv-04003 |

**O P I N I O N**
Plaintiff's Objections to Audit Report, ECF No. 184 – Overruled

**Joseph F. Leeson, Jr.**                                                                **January 10, 2020**
**United States District Judge**

### I.     BACKGROUND

This action was initiated by Plaintiff Derrick Askew, a former employee of Defendant R.L. Reppert Inc., complaining that Reppert failed to properly contribute to its employees' 401(k) Pension Plan and failed to produce requested Plan documents when the error was discovered. After significant litigation, part of the action was disposed of on summary judgment and the remaining claims proceeded to a bench trial.[1] As part of the final judgment, the Court found that Reppert failed to conduct audits of the Plan for plan years 2008 through 2011 in violation of ERISA, and ordered Reppert to engage an independent qualified public accountant to conduct an examination of the financial statements, and of other books and records, of the

---

[1]     This case was previously assigned to the Honorable James Knoll Gardner and reassigned to the Undersigned on February 5, 2018. *See* Order, ECF No. 171.

401(k) Plan, consistent with the requirements of 29 U.S.C. § 1023(a)(3)(A) for the plan years 2008 through 2011 and to amend the annual reports submitted on behalf of the 40l(k) Plan, if necessary. *See* ECF Nos. 132-133, 160-161. This decision was affirmed on appeal. *See* ECF No. 139; *Askew v. R.L. Reppert, Inc.*, 721 F. App'x 177, 186 (3d Cir. 2017) (commenting that "[i]f Askew discerns problems or shortcomings with the audit, he is not foreclosed from seeking appropriate relief").

Reppert completed the audits as directed, but Askew has filed objections to the Auditor's Reports. *See* Objs. 2-4, ECF No. 184. This Court has held two telephone conferences with the parties regarding the objections and has requested and received substantial briefing on the issues. *See* ECF Nos. 185-201. As noted in the Order dated November 12, 2019, the sole remaining objection is that the Auditor allegedly failed to verify the accuracy of all contributions to the 401(k) Plan in accordance with auditing standards. *See* ECF No. 199. For the reasons set forth below, the objection is overruled.

## II. AUDITING STANDARDS

The generally accepted auditing standards, which both parties cite, provide that an auditor must "obtain reasonable assurance about whether the financial statements as a whole are free from material misstatement, whether due to fraud or error." AU-C §200.06. "Reasonable assurance is a high, but not absolute, level of assurance . . . because there are inherent limitations of an audit that result in most of the audit evidence, on which the auditor draws conclusions and bases the auditor's opinion, being persuasive rather than conclusive." AU-C §200.06. Reasonable assurance "is obtained when the auditor has obtained sufficient appropriate audit evidence to reduce audit risk (that is, the risk that the auditor expresses an inappropriate opinion when the financial statements are materially misstated) to an acceptably low level." *Id.*

The use of sampling is permitted. *See* AU-C § 530. Sampling is defined as the "selection and evaluation of less than 100 percent of the population of audit relevance such that the auditor expects the items selected (the sample) to be representative of the population and, thus, likely to provide a reasonable basis for conclusions about the population." AU-C § 530.05.

## III. ANALYSIS

Askew objects[2] to the Auditor's Reports because the Auditor did not verify that Reppert made "all" necessary contributions. *See* Pl.'s Brief, ECF No. 191. Askew argues that the Auditor was required to review the work records of "all" employees. *See id.* Contrary to Askew's assertion, although an auditor may examine all of a company's records, an auditor is not required to do so under ERISA. *See Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559, 581 (1985) (holding that while the trustees of an ERISA plan have the right to conduct an audit involving the records of all employees, even those not participating in the plans, the trustees are not required, nor do they have a duty, to do so). Further, generally accepted auditing standards specifically allow for the use of sampling. *See* AU-C § 530.

The Auditor's use of sampling, among other audit methods utilized, in the instant action was both reasonable and proper. *See* Auditor Letter 2, ECF No. 200-1 (discussing the "variety of audit methods" utilized throughout the audit). Significantly, the Auditor used sampling to verify the accuracy of Reppert's contributions. *See Cent. States, Se. & Sw. Areas Pension Fund*, 472 U.S. at 567 (explaining that the auditor should, when planning a particular sample, consider the

---

[2] It appears that many of Askew's arguments are premised on trial evidence that Reppert did not make the required contributions. *See, e.g.* Pl.'s Brief 5, ECF No. 191 (stating that Diane Reppert admitted at trial that Reppert did not remit automatic deferral contributions). However, the Auditor did not conclude that there were no errors on the part of Reppert. Rather, in each of the Communication With Those Charged With Governance letters, the Auditor reported several misstatements identified during the audits and the necessary corrections regarding the same. The Auditor indicates, however, that "Management has corrected all such misstatements."

specific audit objective to be achieved and "determine that the audit procedure, or combination of procedures to be applied will achieve that objective"). Before choosing a sampling size, the Auditor selected the sample population, which was developed from an employee census report whose completeness was verified against the W-2 Grand Total report. *See* Auditor Letter 2; *Cent. States, Se. & Sw. Areas Pension Fund*, 472 U.S. at 567 ("The auditor should determine that the population from which he draws the sample is appropriate for the specific audit objective."). The Auditor, in his professional judgment after considering the risk assessment, then chose a nonstatistical sample size of 25, which represented approximately 20% of the total population in each of the four plan years. *See id.* at 2-3. These sampling procedures were consistent with auditing standards. *See* AU-C § 530.04 ("The objective of the auditor, when using audit sampling, is to provide a reasonable basis for the auditor to draw conclusions about the population from which the sample is selected.").

Also in accordance with generally accepted auditing standards, was the Auditor's random selection of two pay periods during the year for each of the 25 participants to test Reppert's prevailing wage rate contributions. *See* Auditor Letter 3 (explaining that the Auditor obtained time journal reports for two randomly selected pay periods during the year for each of the sample participants and compared them to the employees' time cards and Pennsylvania Department of Labor Prevailing Wages Project Rates). To ensure that the correct amount of such contributions was calculated, the Auditor, for each participant in the sample for the two pay periods selected: (1) recalculated the participant's hours times the prevailing wage rate; (2) obtained hourly fringe benefits rates for each participant; (3) recalculated the participant's hourly fringe benefits to get a net hourly fringe benefits rate; (4) recalculated the fringe benefits again; and (5) added the hourly prevailing wages total from step 1 to arrive at the total prevailing wage rate contribution for the

pay period. *See* Auditor Letter 3-4 (explaining these steps in more detail). Askew's suggestion that the Auditor did not verify that Reppert made prevailing wage contributions is therefore unfounded.

Additionally, contrary to Askew's contention that "the Auditor clearly did not verify the accuracy of the Company contributions against actual underlying records as required by auditing standards," *see* Objs. 2, the Auditor reviewed, *inter alia*, "payroll registers, time cards, time journal reports, personnel file documents. . .. executed distribution forms, participant notes receivable forms and deferral elections forms," *see* Auditor Letter 2. Askew asserts that the "duty to collect inherently requires that plan trustees audit employer payroll and other work records (containing for example, hours worked and rates of pay) to verify whether all contributions required to be paid to the plan have in fact been paid." Pl.'s Brief 2. Aside from the reference to "all," which the Court previously explained is not required of the Auditor, this duty was satisfied. *See* Auditor Letter 3 (explaining that the Auditor verified the employees' deferral rates per payroll records against the rates documented on the employees' 401(k) enrollment forms in their personnel file and, also, obtained time journal reports for two randomly selected pay periods during the year for each of the sample participants and compared them to the employees' time cards and Pennsylvania Department of Labor Prevailing Wages Project Rates). Further, despite Askew's suggestion to the contrary, *see* Pl.'s Brief 5-6, the Auditor was permitted to rely on certified information from MG Trust Co., *d/b/a* Matrix Trust Co. and Nationwide Financial Services, Inc.[3] *See* 29 C.F.R. §§ 2520.103-5 and -8.

---

[3] *See* Audit Report 2008, ¶ 8; Audit Report 2009, ¶ 8; Audit Report 2010, ¶ 8; Audit Report 2011, ¶ 9 (each stating that the financial information, with certain listed exceptions, was derived from information certified as complete and accurate).

Therefore, Askew's objection to the Audit Reports for plan years 2008 through 2011 is overruled.

**IV.    CONCLUSION**

Reppert has satisfied its obligation to engage an independent qualified public accountant to conduct an examination of the financial statements, and of other books and records, of the 401(k) Plan, consistent with the requirements of 29 U.S.C. § 1023(a)(3)(A) for the plan years 2008 through 2011.  The Auditor's Reports, including the Auditor's use of sampling and review of certain employee records, meet generally accepted auditing standards.  Askew's objections are therefore overruled.

A separate order follows.

BY THE COURT:


*/s/ Joseph F. Leeson, Jr.*_____
JOSEPH F. LEESON, JR.
United States District Judge