UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

───────────────────────────────────────────

DERRICK ASKEW,                                    :
                Plaintiff,          :
                                            :
        v.                                      :         No. 5:11-cv-04003
                                            :
R.L. REPPERT, INC.; RICHARD L. REPPERT;  :
R.L. REPPERT, INC. EMPLOYEES PROFIT       :
SHARING 401(K) PLAN; and                         :
R.L. REPPERT, INC. MONEY PURCHASE        :
PLAN (DAVIS BACON PLAN),                        :
                Defendants.      :

───────────────────────────────────────────

**O P I N I O N**
**Plaintiff's Motion for Attorney's Fees and Costs, ECF No. 206 - Denied**

**Joseph F. Leeson, Jr.**                                                        **July 20, 2020**
**United States District Judge**


**I.**      **BACKGROUND**

      This action was initiated by Plaintiff Derrick Askew, a former employee of Defendant

R.L. Reppert Inc., complaining that Reppert failed to properly contribute to its employees'

401(k) Pension Plan and failed to produce requested Plan documents when the error was

discovered.  After significant litigation, part of the action was disposed of on summary judgment

and the remaining claims proceeded to a bench trial.[1]  Judgment was entered in Askew's favor as

to that part of Count One alleging Reppert failed to provide plan documents for its Employees

Profit Sharing 401(k) Plan in a timely manner and to produce the custodial agreement with

Nationwide Trust Company, FSB, and to that part of Count Four alleging Reppert failed to

─────────────────────

[1]     This case was previously assigned to the Honorable James Knoll Gardner and reassigned
to the Undersigned on February 5, 2018.  *See* ECF No. 171.

conduct audits of the 401(k) Plan. *See* ECF Nos. 132-133, 160-161. Conversely, judgment was entered against Askew and in favor of Reppert as to those parts of Counts One and Four alleging Reppert's failure to conduct audits of the Davis Bacon Plan, and on Counts Two, Three, Five, and Six. *See id.*[2] The Court ordered Reppert to engage a qualified public accountant to conduct an examination of the financial statements, and of other books and records, of the 401(k) Plan, consistent with the requirements of 29 U.S.C. § 1023(a)(3)(A) for the plan years 2008 through 2011 and to amend the annual reports submitted on behalf of the 40l(k) Plan, if necessary. *See id.* Additionally, the Court imposed a $15,959.00 document penalty on Reppert for failing to timely produce Plan documents. *See id.* The decision was affirmed on appeal. *See* ECF No. 169; *Askew v. R.L. Reppert, Inc.*, 721 F. App'x 177 (3d Cir. 2017).

This Court granted Askew's unopposed request to defer filing an attorney fee petition until thirty days after Reppert provided the final audit report. *See* ECF No. 172. Reppert completed the audits as directed, and Askew's objections thereto were overruled. *See* ECF Nos. 202-203. Now pending is Askew's Motion for Attorney's Fees and Costs. *See* Mot., ECF No. 206. For the reasons set forth below, this Court, in its discretion, denies the motion.

## II.     LEGAL STANDARDS

The Employee Retirement Income and Security Act ("ERISA") gives a court discretion in awarding reasonable attorney's fees and costs to either party. *See Ursic v. Bethlehem Mines*, 719 F.2d 670, 673 (3d Cir. 1983) (citing 29 U.S.C. § 1332(g)(1)). It is not automatically mandated that a prevailing party receive an award of attorney's fees. *Id.* (citing *Iron Workers Local No. 272 v. Bowen*, 624 F.2d 1255, 1265 (5th Cir. 1980)). Rather, the Third Circuit Court

---

[2]      Judgment was also entered in favor of the third-party defendants, but those claims need not be discussed for purposes on the instant motion.

of Appeals has "instructed that there is no presumption that a successful plaintiff in an ERISA

suit should receive an award in the absence of exceptional circumstances." *McPherson v.*

*Employees' Pension Plan of Am. Re-Insurance Co.*, 33 F.3d 253, 254 (3d Cir. 1994). The merits

of a motion for attorney's fees is determined through a three-step process:

> 1.      whether the claimant achieved some degree of success on the merits,
>
> 2.      whether the award of attorney's fees is appropriate based on the five *Ursic*

factors," and

> 3.      if attorney's fees are appropriate under the *Ursic* factors, whether the requested

amount of fees and costs is reasonable.

*See Viera v. Life Ins. Co. of North America*, No. 09-3574, 2013 WL 3199091, *2 (E.D. Pa. June

25, 2013) (citing generally *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242 (2010)).

Under the first step, it is required that a claimant either be a "prevailing party" in a matter

or achieve "some degree of success on the merits" to be granted attorney's fees. *See Hardt*, 560

U.S. at 244. To be a prevailing party, a claimant must succeed on a central issue or essentially

succeed in obtaining the relief he seeks for his claims. *See Ruckelshaus v. Sierra Club,* 463 U.S.

680, 688 (1983). On the other hand, if the claimant is not a prevailing party, it is only required

that the claimant achieves more than a "trivial success on the merits" that is not a "purely

procedural victory." *See Hardt*, 560 U.S. at 255 (citing *Ruckelshaus*, 463 U.S. at 694).

As to the second step, the *Ursic* factors are:

> 1.      the degree of the opposing party's culpability or bad faith,
>
> 2.      the opposing party's ability to satisfy an award of attorney's fees,
>
> 3.      whether an award of attorney's fees against the opposing party would deter others

under similar circumstances,

4.       the benefit conferred on members of the pension plan as a whole, and

5.       the relative merits of the losing party's position.

*See Viera*, 2013 WL 3199091 (citing *Ursic*, 719 F.2d at 673). The factors are not a rigid test, but provide a useful general framework for analyzing a motion for attorney's fees. *Viera*, 2013 WL 3199091, at *2 (citing *Fields v. Thompson Printing Co.*, 376 F.3d 259, 275 (3d Cir. 2004)). In utilizing this test, none of the factors are "decisive. . . but together they are the nuclei of concerns that a court should address in applying the ERISA." *Id.*

## III.     ANALYSIS

### A.       Success on the Merits

The Court entered judgment in favor of Askew on part of his claims in Counts One and Four, and in favor of Reppert in all other respects.  Even though Askew did not prevail on every claim, the judgment imposed a penalty of $15,959.00 on Reppert for failing to timely produce documents, and required Reppert to engage an auditor and conduct an audit of four Plan years. Thus, Askew's success on the merits was neither trivial nor purely procedural.   Moreover, Reppert concedes that Askew achieved some measure of success on the merits.  *See* Resp. 9, ECF No. 207.  Consequently, the first step for analyzing the merits of a motion for attorney's fees is satisfied.

### B.       *Ursic* Factors

Only the fourth *Ursic* factor weighs in favor of granting Askew's motion for attorney's fees and costs.  The first, third, and fifth factors weigh against the imposition of attorney's fees and costs; and the second factor is essentially neutral.  Thus, under the *Ursic* factors, imposing attorney's fees on Reppert would not be appropriate.

### 1.    Factor 1: Reppert's Culpability / Bad Faith

Under the first factor, "bad faith normally connotes an ulterior motive or sinister purpose." *McPherson*, 33 F.3d at 256.  However, ulterior motives are not required.  *See id.* "[C]ulpable conduct is commonly understood to mean conduct that is 'blameable; censurable; . . . at fault; involving the breach of a legal duty or the commission of a fault. . . . Such conduct normally involves something more than simple negligence. . . . [On the other hand, it] implies that the act or conduct spoken of is reprehensible or wrong, but not that it involves malice or a guilty purpose.'"  *Id.* (quoting Black's Law Dictionary (6th ed. 1990)).

Here, Reppert's actions in failing to disclose documents to Askew, as well as its failure to perform an audit for certain Plan years were not performed in bad faith, nor with culpability.[3]  In regard to failing to disclose documents, Judge Gardner, after a bench trial, determined that although Reppert "withheld documents intentionally and not inadvertently, it did so with something less than bad faith."  *See* Adjudication 37, ECF No. 160.  The trial court concluded that Reppert believed it was not required to divulge the information under 29 U.S.C. § 1024(b)(4), and that "[this] belief was neither frivolous nor unreasonable" due to the lack of legal precedent on the issue.  *See id.* at 45 (citing Opinion, ECF No. 132).  It stated that whether § 1024(b)(4) even required Reppert to produce the Nationwide agreement was "a close question." *See id.*  Further, even though the trial court found that the $1,800 charge Reppert's attorney required to disclose the documents to Askew's attorney was "impermissible and excessive," the delay in delivering the documents was a product of "an unfortunate breakdown in communications between the parties." *Id.* at 37-39.  The trial court explained that the imposition

---

[3]     Not only was Reppert's conduct prior to trial neither in bad faith nor culpable, as discussed herein, but Reppert's conduct post-trial also fails under the first *Ursic* factor.

of a "moderate penalty" gave credit to Reppert "for those communications, in which it is evident that defendant was working with plaintiff in good faith to determine which documents it needed to produce." *See id.* at 41.  The trial court stated, "[p]unishing Reppert, Inc. for failing to comply with a requirement it was reasonably not aware of would not provide it or any other plan administrator any future incentive to comply with requirements it is not reasonably aware of, and it would be unfair." *Id.* at 46.  On appeal, the Third Circuit Court of Appeals quoted this language and found "no abuse of discretion in this determination." *See Askew*, 721 F. App'x at 185.  Thus, because Reppert's failure to disclose documents was not unreasonable and was caused by an array of factors not solely attributable to Reppert, Reppert did not act with culpability or in bad faith pursuant to the first *Ursic* factor.

Similarly, in filing a simplified annual report without an audit, Reppert did not act with culpability or in bad faith.  A simplified annual report, which is exempted from the audit requirement, may be filed when a plan has between 80 and 120 participants at the beginning of a plan year if a simplified annual report was also filed the previous year.  *See* 29 C.F.R. § 2520.103-1(d).  Here, there was no dispute that prior to 2008 the 401(k) Plan had fewer than 100 participants, and only a simplified annual report was required and was filed.  *See* Adjudication 47 (citing 29 U.S.C. § 1024(a)(2)).  It was also undisputed that in 2012 the Plan had more than 120 participants and Reppert was required to, and did, file a standard annual report and conduct the necessary audit.  *See id.* at 47-48.  Between 2008 and 2011, Reppert relied on the recommendation of a third-party, CalPac, which concluded that the 401(k) Plan had between 110 and 118 participants and thus, did not require an audit.[4]  *See id.* at 50.  Mr. Reppert testified at

---

[4]     CalPac apparently "believed that once they sent a benefits distribution check out to a terminated employee who requested to withdraw his or her benefits, that former employee no

trial that he did not understand how Plan participants are calculated and relied entirely upon CalPac's recommendation. *See id.* The trial court concluded that the "recommendation was the product of good-faith collaboration between Reppert, Inc. and CalPac, [but] it was nothing more than a recommendation -- not a definitive determination." *Id.* Although Reppert did not take any steps to independently verify the information and there were some discrepancies about the number of employees in certain documents, the trial court "believe[d] that the discrepancy was most likely the result of defendants' and CalPac's misunderstanding of who constitutes a 'participant' for purposes of ERISA." *See id.* at 51-54, 57. Consequently, Reppert, in failing to conduct audits for plan years 2008 through 2011, did not act in bad faith, nor was its conduct sufficiently culpable under the first *Ursic* factor. *Accord McPherson*, 33 F.3d at 257-58 (finding that the defendants' conduct was culpable where the pension committee acted out of fear, made misrepresentations, and were "hostile to all lump-sum distributions, despite the Plan's explicit provision for them"). *See also Small v. First Reliance Standard Life Ins. Co.*, No. 02-3744, 2005 U.S. Dist. LEXIS 7942, at *5 (E.D. Pa. May 4, 2005) (determining that the defendants' negligent acts were not sufficiently culpable to award attorneys' fees).

The first factor weighs against awarding attorney's fees to Askew.

### 2.      Factor 2: Reppert's Ability to Satisfy Attorney's Fees

The second factor focuses on whether the offending party has a "means to pay an award" to the moving party. *See Tomasko v. Weinstock*, 255 F. App'x 676, 682 (3d Cir. 2007). The moving party's ability to pay attorney's fees is considered irrelevant to this factor. *See id.* at 683 (citing *Ellison v. Shenango Inc. Pension Bd.*, 956 F.2d 1268, 1277 (3d Cir. 1992)).

---

longer constituted a participant . . . [h]owever, this belief fails to comport with ERISA's broad definition of participant." *See* Adjudication 57-58.

Askew claims Reppert has the ability to reimburse him for legal fees and costs because the company has been in business performing construction work for many years and has used more than 100 employees during any given year.  *See* Mot. 8. On the other hand, Reppert claims that because the company is a private, family-owned business, the cost of attorney's fees would place a large financial burden on Reppert.  *See* Resp. 13.[5]  Neither party has established through such blanket claims that Reppert has the ability to pay.  *See Estate of Schwing v. Lilly Health Plan*, 898 F. Supp. 2d 759, 770 (E.D. Pa. 2012) (concluding that the second *Ursic* factor did not weigh in favor of, or against, an award of fees and costs because the moving party made only unsupported statements regarding the other party's ability to pay based on its type of business).

The second factor is neutral.

### 3. Factor 3: The Deterrence Effect of an Attorney's Fees Award

Factor three under the *Ursic* test directs the court to consider whether the award of attorney's fees to the claimant would deter offending parties in similar circumstances. *See Viera*, 2013 WL 3199091, at *2 (citing *Ursic*, 719 F.2d at 673). Even in instances where the offending party did not act in bad faith, the Third Circuit Court of Appeals has concluded that awarding fee awards for culpable conduct may further the objectives of the ERISA.[6] *See McPherson*, 33 F.3d at 258 (quoting *Kann v. Keystone Resources Inc. Profit Sharing Plan*, 575 F. Supp. 1084, 1096-97 (W.D. Pa. 1983)). For instance, a company being forced to pay a plaintiff's attorney's fees after it wrongfully denied him his share of a pension plan would be dissuaded from quickly

---

[5]     Reppert also believes that because the Carpenter's Union paid for the entirety of the litigation, including attorney's fees and costs, the company should not be responsible for reimbursing Askew for the fees and costs.  *See* Resp. 14.

[6]     ERISA "sets minimum standards for most voluntarily established retirement and health plants in private industry *to provide protection for individuals in these plans.*" *ERISA*, U.S. DEPARTMENT OF LABOR (July 2, 2020, 12:12 PM), http://dol.gov/general/topic/health-plans/erisa (emphasis added).

denying other eligible participants their benefits in the future. *See Kann*, 575 F. Supp. at 1096-97 ("By ordering the defendants to pay attorney's fees . . . defendants will be less likely and not so quick to deny benefits to other eligible Plan participants").  "For deterrence to be effective, however, the conduct to be deterred must have been undertaken knowingly." *Smith v. Contini*, No. 97-2692, 2003 U.S. Dist. LEXIS 14336, at *8-9 (D.N.J. Aug. 19, 2003) (concluding that because "the Local 641 Fund believed, however erroneously, that the Plan's provisions were in compliance with ERISA[, t]here can be no deterrent effect by the imposition of attorneys' fees against conduct that the Local 641 Fund believed was legal").

As previously discussed, Reppert did not know its conduct violated ERISA.  The trial court concluded that Reppert acted in good faith to determine which documents it needed to produce, and its belief it was not required to disclose documents was not unreasonable. *See* Adjudication 41, 45.  Further, Reppert engaged in a "good-faith collaboration" with CalPac to determine the number of Plan participants, and its failure to audit Plan years 2008 through 2011 was due to a "misunderstanding" of the law. *See id.* at 51-54.  Accordingly, in the absence of knowledge, bad faith, or culpable conduct, the imposition of attorney's fees would have no deterrent effect. *See Davis v. Reliance Standard Life Ins. Co.*, No. 08-786, 2010 U.S. Dist. LEXIS 46516, at *9-10 (E.D. Pa. May 11, 2010) ("Without a determination that Defendant was culpable, we find that an award of attorney's fees would not act as a deterrent, and thus, this factor weighs against granting the motion.").

Moreover, the trial court imposed a penalty for Reppert's failure to disclose documents. When imposing the penalty, the trial court concluded, and the Third Circuit Court of Appeals agreed, that "[p]unishing Reppert, Inc. for failing to comply with a requirement it was reasonably not aware of would not provide it or any other plan administrator any future incentive to comply

with requirements it is not reasonably aware of. . . ."  *See* Adjudication 46; *Askew*, 721 F. App'x at 185.  Additionally, Reppert now knows how to correctly calculate Plan participants under ERISA and has since audited the missing Plan years.  This case as a whole dissuades Reppert from repeating its mistakes in the future and, under the circumstances, an award of attorney's fees would not deter other companies from committing similar violations.

Factor three weighs against imposing attorney's fees.

### 4. Factor 4: The Benefits on the Plan as a Whole

The fourth factor directs the court to determine "whether the results of the case would vest future claimants with a benefit." *Viera*, 2013 WL 3199091, at *4. Specifically, this involves considering the benefit conferred on members of the pension plan "as a whole." *See McPherson*, 33 F.3d at 254 (citing *Ursic*, 719 F.2d at 673). For instance, pension plan members having an easier time receiving their benefits from a company after it was dissuaded from improperly denying these claims in a prior case is considered a sufficient "benefit" that satisfies the *Ursic* test. *See Kann*, 575 F. Supp. at 1097.

In the present case, the fourth factor weighs in favor of Askew. The results of the case will benefit future claimants since Reppert will disclose information more readily now that the company is more aware of the requirements under § 1024(b)(4), similar to the pension plan members in *Kann*, 575 F. Supp. 1084. Further, Plan members are able to access information about their financials for the missing Plan years now that an audit was completed per the Court's instructions.  Therefore, factor four weighs in favor of awarding attorney's fees.

### 5. Factor 5: The Merits of Reppert's Position

The fifth and final *Ursic* factor is "the merits of the losing party's position relative to those of the prevailing party." *Viera*, 2013 WL 3199091, at *4.  Even though a losing party's

position is not sustained, that "alone [does not] put the fifth factor in the column favoring an award." *McPherson*, 33 F.3d at 258.

In the present case, the fifth factor does not support awarding Askew with attorney's fees. As previously discussed, Reppert's position in failing to disclose the proper documentation was found to be "neither frivolous nor unreasonable." *See* Adjudication 45. In fact, the cause was attributed to a breakdown in communication between the parties and thus, not the sole wrongdoing of Reppert. *See id.* at 38-39. Further, Reppert's decision not to conduct an audit was made after a "good-faith collaboration" with CalPac, in which the parties "[misunderstood] who constitutes a 'participant' for purposes of the ERISA." *See id.* at 51, 57. Accordingly, although judgment was entered in Askew's favor as to parts of Counts One and Four, Reppert's position was not wholly lacking in merit. Notably too, judgment was entered in favor of Reppert and against Askew on all other counts.

The fifth *Ursic* factor weighs against awarding attorney's fees.

### C.      Reasonableness of Requested Fees

If the *Ursic* factors find that attorney's fees are appropriate, the final step in analyzing the merits of a motion for attorney's fees is that the requested amount be "reasonable." *See Viera*, 2013 WL 3199091, at *2 (citing *Hardt*, 560 U.S. at 2155).

In the present case, the Court has determined that under the *Ursic* test imposing attorney's fees on Reppert would not be appropriate. Therefore, there is no need to consider the reasonableness of the amount requested.

## IV.      CONCLUSION

Askew has satisfied the first showing for an award of attorney's fees: he has achieved some degree of success on the merits. However, Askew does not show that the five *Ursic* factors

weigh in favor of awarding attorney's fees and costs.  The first, second, third, an fifth factors are either neutral or weigh against an award of attorney's fees and costs: (1) Reppert's conduct was not culpable or in bad faith; (2) neither party has established that Reppert has, or does not have, an ability to pay the attorney's fees and costs of the litigation; (3) an award of attorney's fees would not have a deterrent effect on future litigants; and (5) though incorrect, Reppert's position was not unreasonable. Factor (4), the result of this litigation would benefit future claimants and plan members, supports granting Askew's motion for attorney's fees, but is substantially outweighed by the other factors.  Therefore, because the Court has determined that under the *Ursic* test imposing attorney's fees and costs on Reppert would be inappropriate, the analysis of whether the requested fees was reasonable is immaterial.  This action does not present "exceptional circumstances" to support an attorney's fee award.  Askew's motion is denied.

      A separate order follows.

BY THE COURT:


*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge